# Dickerson's Appeal.

1. The owner of personal property may impose upon it a valid trust, either by a declaration that he holds the property in trust, or by a transfer of the legal title to a third party upon certain specified trusts. If he makes himself trustee, no transfer of the subject matter of the trust is necessary.

2. Where the facts show an executed intention or purpose, coupled with an express trust in the donor for the benefit of the objects of his bounty, unrevoked by him at the time of his death, such a trust is valid against all except creditors. A trust thus created cannot be revoked by the donor undertaking in his will to annex thereto special terms, or qualifications not expressed in the original declaration of trust.

3. A reserved right of revocation is not inconsistent with the creation of

a valid trust.  If the right is not exercised during the life of the donor and according to the terms in which it was reserved, the validity of the trust remains unaffected.

4.  A husband may dispose of his personal property in good faith by gift or otherwise during coverture free from all *post mortem* claims thereon by his widow.

· January 13th, 1887.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.  CLARK, J., absent.

APPEAL from the Orphans' Court of *Philadelphia county :* Of July Term 1886, No. 145.

Appeal of Mary Dickerson, widow, from the decree of distribution of said court in the estate of her husband, John Dickerson, deceased.

The following are the facts as they appeared before the auditing Judge, ASHMAN, J.

The decedent died testate on August 10th, 1884, leaving to survive him his widow, Mary Dickerson, and four children: Grace D. O'Connell, Thomas J. Dickerson, Charles T. Dickerson, E. Gertrude Manning, and four grandchildren, being the children of John M. Dickerson, a deceased son, viz.:—John B. Dickerson, Maria L. Dickerson, Milton O. Dickerson, Sarah E. Dickerson.  Maria L. and Sarah E. are minors.  The widow elected to take against the will.

The widow was his second wife, whom he married November 17th, 1869.  He had no children by her.

It was his habit, as each child was born, to create a fund for its benefit by setting apart, from time to time during its growth, various sums of money.  He commenced this practice prior to 1856.  On June 2d, 1875, he held ten six per cent. mortgage gold loan bonds of the Lehigh Coal and Navigation Company, each for $1,000, which he had purchased out of these funds so set apart for his children; although they were registered in his own name on the books of the company.

On their face they were payable to the holders with the right to have them registered and made transferable on the books of the company.

On the second day of June, 1875, he executed the two following assignments of the bonds, viz.:—

No. 1.  For value received, I, John Dickerson, hatter, hereby assign and transfer five thousand dollars gold loan of 1897, of the Lehigh Coal and Navigation Company, to John Dickerson, trustee for Charles Thompson Dickerson.

Philada., *June 2d,* 1875.       JOHN DICKERSON, Hatter.
Witness:
W. A. BUCHANAN.

1536.
1871.
2376.
3290.
4066.
}
Received bonds as above described, $5,000.—6-2-75.

JOHN DICKERSON, Hatter.

No. 2. For value received, I, John Dickerson, hatter, hereby assign and transfer five thousand dollars gold loan of 1897, of the Lehigh Coal and Navigation Company, to John Dickerson, trustee for Thomas Jefferson Dickerson.

Philada., *June 2d*, 1875.　　　　JOHN DICKERSON, Hatter.
Witness:
W. A. BUCHANAN.

563.
1478.
1798.
1799.
4212.
}
Received bonds as above described, $5,000.—6-2-75.

JOHN DICKERSON, Hatter.

Having executed these assignments, he delivered them to the company, as notice of the interest of his children in the bonds, and evidence of their equitable title, and had the bonds registered on the books of the company in his name as trustee for his said children, by name; he also indorsed upon each of the bonds, and had the same approved by the company, that the bonds had been duly transferred and assigned on the books of the company by him to himself, as trustee for his respective children by name.

He then placed the five bonds belonging to Charles Thompson Dickerson in an envelope, upon which he wrote the following indorsement, viz.: These bonds belong to John Dickerson, in trust for Charles Thompson Dickerson, and were purchased for him from a fund created by the saving of small sums of money from the day of his birth, and set apart for his special benefit.　　　　　　　　　　　JOHN DICKERSON.

In like manner he placed the five bonds belonging to Thomas Jefferson Dickerson in another envelope, placing upon it a similar indorsement.

During his lifetime, he frequently spoke of these bonds to various persons, including his present widow, stating that he had made these investments for his children.

On his death, the bonds were found among his papers, in a safe which he rented from the Fidelity Insurance, Trust and Safe Deposit Company, enclosed in the envelopes, and still standing on the books of the company in his name, as trustee for his children. The company being in possession of the assignments executed by him, which they still hold.

He left a will, dated July 18th, 1884, wherein, after directing the payment of his debts and funeral expenses, and making a small, specific bequest, he gave, devised and bequeathed all the rest, residue and remainder of his estate, real, personal and mixed, whatsoever and wheresoever, to the same persons, and for the same estates, as would have been entitled to and inherited the same had he died intestate.

Having thus made his will, he then proceeded to declare as follows, viz. :—

Fifth.—Whereas I have heretofore at different times invested various amounts in my name, as trustee generally, or as trustee for my respective children; which investments and settlements were purely voluntary upon my part, and in which no terms of trust were declared, it being my intention to set forth the same in my last will and testament: Now, therefore, I do hereby declare that the said securities and investments were and are held by me upon the following uses and trusts, that is to say : In trust to pay to myself the income for life and, at my decease, that the Fidelity Insurance, Trust and Safe Deposit Company, who shall thereafter act as trustee in my place and stead, shall hold said investments in kind and keep the same invested and shall pay the net income thereof, as it shall accrue, unto my children respectively, for whose use I have made such investments (as indicated by the registry of the certificates of the same) for life, or, if I shall have made any of such investments as trustee generally, then to hold the same and pay the income thereof to my children now living, to wit, Charles T. and Thomas J. Dickerson, . . . . . for life and, after the decease of each one of them respectively, then to hold their share for the use of their children and pay the income to them until the youngest one attains the age of twenty-one years and thereupon to divide the principal between them equally, absolutely. Should any of my said grandchildren die, leaving issue, then and in such case I direct that such issue shall take their parents' share of principal and income.

He appointed the Fidelity Insurance, Trust and Safe Deposit Company his executors, to whom letters testamentary were duly issued.

After the death of the testator, the bonds remained in the hands of the company as trustees for the appellees; they received and took them in that capacity, and not as executors.

Subsequently the appellees, under the advice of the Trust Company, presented petitions to the Court of Common Pleas, No. 1, of Philadelphia county, setting forth the foregoing facts, and praying the court to appoint the company their trustee, to succeed the said John Dickerson, deceased. The company having filed their answer, admitting the facts set forth in the petitions, and joining in the prayer, the court, on the twentieth day of December, 1884, ordered and decreed that the appointment of the company as trustees of the trust estates to succeed the deceased trustee, John Dickerson, made by the last will and testament of John Dickerson, deceased, be and the same hereby is confirmed and made stable; and that the said trustees be and they hereby are ordered and directed to hold said estate upon the terms, limitations and conditions set forth in the said last will and testament of John Dickerson, deceased.

Subsequently, at the audit of the account of the company as executors of the said estate, the widow of decedent elected to take against his will, claiming that the trusts were testamentary trusts arising under the will, and therefore void as against her, and that the bonds formed part of the decedent's estate, in which she was entitled to share as the widow.

The auditing Judge allowed her claim. To this exceptions were filed, which the court *in banc* sustained. HANNA, P. J., filing the following opinion:

The controversy here arises from the election of the widow to take against the will, and the effort to increase the share of the personal estate to which she is thereby entitled, by surcharging the executor with certain investments and securities, alleged to have been the property of her husband at the date of his death, but never appraised and inventoried as of his estate, and therefore not included in the account. The account, fortified with the *jurat* of the accountant, is *prima facie* correct, and the *onus* is upon the party alleging its incorrectness. A surcharge is of serious moment to an accounting fiduciary, and implies dereliction of duty by omitting to answer for assets actually received, or which ought to have been received, and with the exercise of ordinary care and diligence might have been collected. The result is personal liability. But this penalty is not imposed in the first instance, except where gross negligence or fraud is manifest. The usual practice is to afford the accountant opportunity to convert unrealized assets, or collect by suit or otherwise, property alleged to belong to the decedent, and render a future account thereof. In the present instance the executor is surcharged with alleged assets, not because of default or misconduct, but more as a matter of form than substance, in order to ascertain the shares of the distributees and without increasing the liability of the

executor; and for the reason that the investments and securities, although in the possession of the accountant, as trustee for the children of the testator, were his property, and to be included, together, with his other personal estate, in the account.

If this be correct, it follows that the trust and settlement by testator in favor of each of his children must be declared void, the bonds and shares of stock are liable for his debts, and the widow rightfully claims a share thereof as if her husband died intestate. But we have reached the opposite conclusion. The testator declared, with the greatest accuracy and minuteness, that he held the bonds and shares as trustee for his children. Actual delivery to them, which was unnecessary, alone was wanting, and nothing remained to be done by him to vest in them more completely the title and full beneficial ownership. As to the bank stock, it is conceded by the Auditing Judge, that the trust is valid and the surcharge is refused.

But we cannot discover any distinction between this and the trust for the remaining children. The loans or bonds were assigned by testator to himself as trustee upon the books of the corporation, and so registered; the assignments were deposited with the corporation; and, in addition, he enclosed the bonds or certificates of loan in a separate envelope, upon which he indorsed that they belonged to him as trustee for his children *eo nomine*, and were purchased for them from a fund created by the savings of small sums of money from their birth, and set apart for their special benefit. It would be difficult to exercise greater precision and observance of form and detail than was employed by testator to indicate his gift and demonstrate the equitable ownership of his children. In the deed of trust for the shares of bank stock, it is true, he expressly reserved a power of revocation; and as to the other trusts, it may be conceded he had at any time the authority to revoke by assigning and transferring the loan, under the Act of May 23d, 1874, P. L. 222, although exceedingly doubtful, without the consent of *cestuis que trusts:* Bayard *v.* The Bank, 2 P. F. S., 232; Bohlen's Estate, 25 Id., 304; Lehigh Coal Co.'s Appeal, 7 Norris, 499. But see *contra.* Stockton *v.* Lehigh Coal Co., 9 Weekly Notes, 110, cited by Common Pleas, No. 1.

Yet the fact remains that the testator never exercised the power of revocation nor transferred the loans upon the books of the corporation, and they remained in his name as trustee until his death, a period of nine years after the creation of the trusts. In view of these uncontroverted facts, we are unable to reach any other conclusion than that the several trusts are

valid. That the testator had the power to dispose of his personal property by gift, *inter vivos*, will not be questioned.

As GIBSON, C. J. says in Ellmaker *v.* Ellmaker, 4 Watts, 91: "Who is so ignorant as not to know that a husband may dispose of his chattels during the coverture without his wife's consent, and freed of every *post mortem* claim by her?"

And SHARSWOOD, J., in Pringle *v.* Pringle, 9 P. F. S., 285, said: "But as to personal property by gift, *inter vivos*, his power is absolute."

Creditors have not been prejudiced. And while the trust of the bank stock, wherein testator reserved to himself the income for life, with the power of revocation, as before stated, in view of Mackason's Appeal, 6 Wright, 330, could not be sustained as against creditors, either prior or subsequent, yet the remaining trusts, absolute assignments by testator of personal property, without either any reservation to himself of an interest therein or power of revocation, although, to say the least, assailable by existing creditors, must be held valid as against future creditors not at the time contemplated by him: Harlan *v.* Maglaughlin, 9 Norris, 293.

Such being the case, then with what merit can the widow urge that a fraud has been perpetrated by her husband upon her right to share in his estate, by the creation of trusts of personal property, with moneys set apart by him for his children by a prior marriage many years before her marriage with him, and which he indisputably had the power to do, the claims of creditors not being interfered with, and not only recognized by him thereafter, but undisturbed at his death and confirmed by his will?

We are clearly of the opinion that the securities and investments referred to should not be considered the property of testator at the date of his death, but of his children, the *cestuis que trust*. And in this we are sustained by the authorities, among which may be cited: Crawford's Appeal, 11 P. F. S., 52; Bond *v.* Bunting, 28 Id., 210; Robert's Appeal, 4 Norris, 84, and Malone's Estate, 13 Philadelphia, 313, S. C., 38 Legal Int., 303.

Our conclusion therefore is, that accountant is improperly surcharged. But it is argued, that it appears from the will, they remained the property of testator from the fact that he thereby declares the trust upon which he held the investments, appointed his successor in the trust, prescribes its uses and purposes, and directs final disposition, and therefore the investments became the subject of a testamentary trust. And further, as the trust cannot operate except upon property of the testator, the investments must be considered as belonging to his estate, and for which the executor is accountable. But this is a *petitio prin-*

*cipii.* The point to be determined is not whether testator could rightfully declare a testamentary trust, but whether the shares of stock and loans are to be treated as his property. If not, the trusts declared as to the property of others cannot, in any event, affect the title of the actual owner. That is what the testator attempted to do, and without authority. The investments were not his individual property; although once his, the moment he assigned them to a trustee for his children they became their property, and except in the case of the bank stock, they were also entitled to the interest and income. Testator having parted with his ownership, could not subsequently, by will, declare a trust as to their property, any more than he could bequeath the loans and stock to his children or to a stranger. Had he done so the title of the former would not depend upon the bequest, but upon the previous assignment to their trustee. And in the event of a bequest to a stranger, not only would the title of the children be undisturbed, but had the legacy been specific, the legatee would be disappointed of his legacy. For .these reasons, we think the will has no bearing upon the vital question before us. It is, however, furthermore contended that the executor and the children of testator are concluded by the appointment of the accountant as trustee under the will, by the Court of Common Pleas, to hold the loans upon the trusts declared in the will. But that is not material. Instead of claiming the loans absolutely, the children can elect to recognize the trusts. It is optional with them. But it does not thereby follow that the loans and shares of stock were the individual property of their father, subject to all the incidents of ownership, such as liability for his debts, commissions of the executor, etc. And this result cannot be avoided if the claim of the widow is sustained. But such violence to the intention of her husband, and injustice to his children, should not be permitted. The widow is entitled to her share, according to the intestate law, of the balance of the personal estate of her husband at the date of his death, and no more. Her interest in the real estate is not material to the present inquiry.

It remains but to add, with the concurrence of the Auditing Judge, that the claim for mourning goods furnished the widow is allowed.

The first three exceptions of the accountant are dismissed; those remaining, with the exceptions of the children of testator, sustained; but those of the widow, save the fifth, dismissed, and the adjudication will be corrected in the final decree, to be prepared by counsel in accordance herewith.

A decree in accordance with the above opinion was thereupon entered, whereupon the widow took the appeal, assigning said decree for error.

*Harold Goodwin* and *J. H. Gendell* for appellant. The deed of trust for Gertrude E. Manning is testamentary in its nature, and the widow is entitled to have the stock named therein, included in the value of the estate, in estimating her share.

Now, that this instrument was but a will, the definition of a will and our own adjudged cases determine in the affirmative. A will is that which a man wills to be performed after his death; or it is an instrument by which a person makes a disposition of his property, to take effect after his decease, and which is in its own nature ambulatory and revocable during his life: 1 Jarman on Wills, *17; 2 Black. Com.,*500; Redfield on Wills, 5; Rhone's Orphan Court Practice, 707: Perry *v.* Scott, P. F. S., 123; Turner *v.* Scott, Id., 126; Scott *v.* Scott, 20 Id., 244; Frederick's Appeal, 2 Id., 338; Nace *v.* Boyer, 6 Casey, 99; Rife's Appeal, 16 W. N. C., 535; Ellison *v.* Ellison, 6 Ves., 656; Book *v.* Book, 8 Out., 240; Frew *v.* Clark, 30 P. F. S., 170.

The trusts for Charles Thompson Dickerson, Thomas Jefferson Dickerson and Grace D. O'Connell were testamentary in their nature and void as against the widow: Eyre's Appeal, 10 Out., 184; Thompson's Executors *v.* Lloyd, 13 Wr., 127; Baker's Appeal, 11 Out., 381; Heineman's Appeal, 11 Norris, 95; Stockton *v.* Lehigh Coal and Nav. Co., 9 W. N. C., 110.

The stock and bonds included in these various trusts should be brought into the general estate for the purpose of reckoning the amounts to which the widow is entitled, under her election to take against the will.

Has the Orphans' Court power so to marshal the funds as to arrive at this result? We answer on the authority of the following cases, Yes: Barklay's Estate or Loomis' Appeal, 10 Barr, 390; Whiteside *v.* Whiteside, 8 Harris, 473.

Examples and illustrations of the exercise of this power may be seen in Lewis *v.* Lewis, 1 Harris, 82; Sandoe's Appeal, 15 P. F. S., 314; Brubaker's Appeal, Id., 317; Gallagher's Appeal, 6 Norris, 200.

The jurisdiction of the Orphans' Court in such matters is *exclusive;* Linsenbigler *v.* Gourley, 6 P. F. S., 162, 172; Hammett's Appeal, 2 Norris, 392; Williamson's Appeal, Id., 231; Hancock's Appeal, 2 Amerman, 541; Mackason's Appeal, 6 Wr., 330.

*George P. Rich* and *John W. Patton* (*Mayer Sulzberger* and *Ephraim Lederer* with them), for appellees.—The appellees contend:—

1. That John Dickerson being, in 1872, the owner of these

bonds, which he had previously bought for his children, with moneys devoted by him to that purpose, prior to his marriage to appellant, had the right either to give the bonds directly to his children, or to a trustee for them, or to constitute himself a trustee for them.

2. That upon his making himself a trustee for them without any further limitations, the trust was irrevocable, and became a dry or executed trust, under which they were the absolute owners of the bonds: hence their estate existed independently of the will, and would have existed had he died intestate.

3. Having parted with his ownership, he could not subsequently by will revoke his gift or declare a different trust, any more than he could interfere with the property of a stranger; but the fact that his children chose to acquiesce in his interference with their vested rights, would not estop them from contesting the widow's claim to take the property from them, as the property of her husband.

When a settlor is possessed of the legal title to the subject-matter of settlement, he may create a valid trust thereof, either by a declaration that he holds the property in trust, or by a transfer of the legal title to the property to a third party on certain trusts; in other words he may constitute either himself or another person trustee. If he makes himself trustee, no transfer of the subject-matter is necessary; if he makes a third party trustee, he must transfer to him the subject of the trust in such a mode as will be effectual to pass the legal title: Bispham's Equity, page 78, sec. 67; Perry on Trusts, page 67, sec., 96; Jones v. Lock, L. R. 1 Ch., 25; ex parte Pye, 18 Vesey, 140; Morgan v. Millson, L. R. Eq., 475; Hill on Trustees, § 86, p. 117; Crawford's Appeal, 11 P. F. S., 52; Trough's Estate, 75 Pa. St., 115; Robert's Appeal, 85 Id., 84; Bond v. Bunting, 78 Id., 210; Helfenstein's Estate, 27 P. F. S., 328; Martin v. Funk, 18 Albany L. J., 451; Stone v. Hackett, 12 Gray, 227.

The test of a testamentary disposition, is whether it is to take effect after the grantor's death. This of course involves the question of its irrevocability, because if not revocable, it cannot be testamentary; but it follows not that because a trust is revocable, that it is therefore testamentary.

On the contrary, the power to revoke should always accompany voluntary settlements, and its absence in conjunction with circumstances tending to show fraud, mistake or misapprehension of the true character of the deed is strong evidence of fraud: Russell's Appeal, 25 P. F. S., 270; Rick's Appeal, 9 Out., 528.

That these trusts were irrevocable from the moment of their creation is settled by Greenfield's Estate, 2 Harris, 489; Eck-

man *v.* Eckman, 18 P. F. S., 460; Russell's Appeal, 25 Id., 269; Fellon's Appeal, 12 Norris, 470; Twining's Appeal, 1 Out., 36; Book *v.* Book, 8 Id., 244.

The principle established by these cases being that purely voluntary gifts or conveyances in trust, made with full knowledge of the nature of the act, and vesting an immediate beneficial interest in the objects of the grantor's bounty, are irrevocable in equity as well as at law, where no power to revoke is reserved.

Nor is it essential that the *cestui que trust* or the trustee should have notice of the creation of the trust: See Perry on Trusts, § 105, p. 74.

If on the other hand, it be held, that the terms of the trust as originally created, were as subsequently disclosed by the will; yet the fact that the grantor reserved an interest during life in the proceeds of the property, and gave a future benefit to other persons named, gives no implied right of revocation, even had he sought to exercise it: Greenfield's Estate, 2 Harris, 489; Ritter's Appeal, 9 P. F. S., 9; Fellows' Appeal, 12 Norris, 470; Book *v.* Book, 8 Out., 240.

While, if the trusts were revocable, in the absence of an exercise of the power, its mere existence would have no effect whatever.

Mr. Justice STERRETT delivered the opinion of the court February 7th, 1887.

If the bonds and bank stock in controversy were the subjects of valid trusts, impressed upon them by the testator in his lifetime in favor of his children and so remained until after his decease, they were not his property in his own right at the time of his death in 1884, and hence appellant, claiming as his widow against the will, has no interest in the securities or the proceeds thereof.

For reasons given in the opinion of its learned president, we think the Orphans' Court was clearly right in holding that the securities in question were the subjects of express trusts, created by the testator in favor of his children respectively and unaffected by anything that occurred prior to his death. The decree might well be affirmed on that opinion without attempting to further vindicate its correctness by adding anything thereto.

About the year 1856, nearly fourteen years before his marriage to appellant, testator inaugurated the scheme of providing a fund for the benefit of each of his children, by setting apart from time to time various small sums of money for that purpose. In 1875, the fund thus accumulated was represented in part by ten $1000 bonds of the Lehigh Coal and Navigation

Company, which on their face were payable to bearer, with the right to have them registered and made transferable on the books of the corporation. On June 2d of that year, testator executed two assignments of these bonds, one, embracing five of them designated by their numbers, to himself "John Dickerson, trustee for Charles Thompson Dickerson," and the other, embracing the remaining five, designated in same way, to himself, "trustee for Thomas Jefferson Dickerson." These assignments, duly executed and witnessed, were delivered to the company as evidence of the respective equitable interests of his sons in said bonds. At the same time, he had the bonds themselves registered on the books of the company, in his own name as trustee for each of his sons by name. He also indorsed on each of the bonds, and had same approved by the company, that they had been thus duly transferred and assigned on the books of the corporation by him to himself as trustee for his sons. In addition to all this, the five bonds thus impressed with a trust in favor of his son Charles were placed in an envelope on which testator made this indorsement : " These bonds belong to John Dickerson in trust for Charles Thompson Dickerson, and were purchased for him from a fund created by the saving of small sums of money from the day of his birth and set apart for his special benefit." Signed, "John Dickerson." The five bonds in trust for his son Thomas Jefferson were in like manner placed in another envelope similarly indorsed. Afterwards testator frequently spoke of these bonds to several persons, including appellant, as investments made for his children. After his death the bonds enclosed in the envelopes, as above described, were found among his papers in the safe which he had rented from the "Fidelity Insurance Trust and Safe Deposit Company." On the books of the Lehigh Coal and Navigation Company they remained, unchanged, in his name as trustee for his sons respectively. The original assignments also were in the possession of the company and still remain there.

The trust of $5,000, Philadelphia and Reading Railroad bonds, in favor of testator's daughter, Grace Darling O'Connell, is substantially a counterpart of those in favor of his sons, above described.

That in favor of his daughter, Mrs. Manning, is different in form but equally effective. It consists of twenty-seven shares of Farmers and Mechanics bank stock, the certificate of which was deposited with the bank, together with testator's declaration of trust that he held the same as trustee for her separate use for life with power to her to appoint by will, etc.; and in case of testator's death, designating David Dickerson as substitute trustee. In same instrument testator reserved the

5 AMERMAN—14

right to collect and appropriate the dividends at his own discretion, and also the right to revoke the trust. At his death the stock remaining in same condition was delivered by the bank to David Dickerson, the substituted trustee, by whom it is now held.

It is difficult to conceive how the testator could have more effectually impressed, upon the securities, present trusts in favor of his respective children, without selecting a third party to act as trustee and delivering the securities to him. To do that, was not necessary to the creation of valid trusts. It is well settled that the owner of personal property may impress upon it a valid present trust, either by a declaration that he holds the property in trust, or by a transfer of the legal title to a third party upon certain specified trusts. In other words, he may constitute either himself or another person trustee. If he makes himself trustee no transfer of the subject matter of the trust is necessary; but, if he selects a third party, the subject of the trust must be transferred to him in such mode as will be effectual to pass the legal title: Bispham's Equity, 78; Perry on Trusts, Sects. 96, 98; Hill on Trustees, 117, *et seq.* Where, as in this case, the facts show an executed intention or purpose, coupled with an express trust in the donor, for the benefit of the objects of his bounty, unrevoked by him at the time of his death, such a trust is clearly valid against everybody except creditors. A reserved right of revocation is not inconsistent with the creation of a valid trust. If the right is not exercised during the lifetime of the donor, and according to the terms in which it is reserved, the validity of the trust remains unaffected as though there never had been a reserved right of revocation: Stone *v.* Hackett, 78 Mass., 227. In that case a delivery of railroad stock, without consideration, in trust to pay the income to the donor for life, and at his death to transfer the shares to charities, with a clause of revocation, was held good against the widow, who claimed her share in the same as part of her husband's estate.

There is nothing in the transaction to indicate that either of the trusts was intended to take effect only on the death of the testator, and were therefore testamentary. On the contrary everything that was done by him points to an intention to create a present trust in favor of each of his children. If he had died intestate, they would have been clearly entitled to the securities set apart by him and impressed with trusts in their favor. Even in his will he recognizes the existence of previously created trusts, in favor of his children, in which, as he says, " no terms of trusts were declared," and speaks of his intention to set forth the same in his will; and we find that in that he does not attempt to revoke the trusts previously

[Adams v. Edwards.]

created, but merely to qualify the terms thereof to some extent. If it be true then that he did create absolute and unconditional trusts in favor of his children, respectively, and designate himself as their trustee, the trusts thus created could not be revoked by his undertaking to annex thereto special terms or qualifications not expressed in the original declarations of trust. If the *cestuis que trust* choose to respect the testamentary wish of their father, and accept the qualified terms specified in his will they do not thereby renounce their right to the securities which were the subjects of the respective trusts, and thus preclude themselves from claiming the same as valid gifts *inter vivos*. In other words they may accept the additional or modified terms of trust expressed in the will and still retain their right to the securities as valid gifts from their father to them in his lifetime, subject however to such self-imposed qualifications.

It follows from what has been said, that the securities in question were subjects of valid trusts created by the testator, in favor of his children, prior to his decease, and having so continued, unrevoked by his will or otherwise, they should be treated as gifts *inter vivos*, and therefore no part of his personal estate at the time of his death.

It is scarcely necessary to add that such gifts, made in good faith as these were, cannot be impeached on the ground that they are a fraud upon the rights of the widow. Nothing is better settled than the power of a husband to dispose of his personal property in good faith, by gift or otherwise, during coverture, free from all *post mortem* claims thereon by his widow: Ellmaker *v.* Ellmaker, 4 Watts, 91; Pringle *v.* Pringle, 59 Pa., 281.

> Decree affirmed and appeal dismissed at the costs of appellant.