## In re Mines

154

*George E. Letchworth, Jr.*, for claimants.
*Isadore S. Wachs*, for Commonwealth.

KUN, J., December 15, 1937.—In the audit of the account of the Girard Trust Company, guardian of the estate of the above-named weakminded person, Ellen S. Mines and Sidney J. Mines claimed the balance of the fund. The Commonwealth appeared and claimed that the fund is subject to inheritance taxes, which should be deducted before any award is made to the claimants.

The following facts were stipulated:

William James Mines had a savings account, in his individual name, in the Philadelphia Saving Fund Society. On May 2, 1923, at which time there was approximately $2,800 in the account, he filed the following writing with the society:

"I hereby transfer the within account, in trust, for my sisters, Ellen S. Mines and Sidney J. Mines, or the survivor."

He notified his two sisters of this action, but he retained possession of the passbook, making additional deposits in the account and withdrawals therefrom. On October 14, 1935, the balance in the account had increased to $3,359.80. On that date, William James Mines was declared incompetent, and the Girard Trust Company was appointed guardian of his estate. At the time of the appointment of the guardian, the weakminded person had no estate in his own right, and his two sisters, cestuis que trustent of the savings account, entered into an agreement with the guardian, whereby the funds were released

from the trust for the sole and limited purpose of rendering the funds in the account available to the guardian for the support and maintenance of the incompetent, reserving, in all other respects, their rights as beneficiaries of the trust account. On August 30, 1937, the incompetent died while a patient at the Norristown State Hospital. The guardian filed its account, showing a balance of $2,450.17 for distribution, after all claims allowable in this proceeding are paid, which is really the balance in the trust account, no other funds having come into the guardian's possession.

In answer to a petition of the guardian of such a depositor-trustee (declared incompetent) of a similar account, requesting the instructions of the court as to their duties in relation to such a fund, Judge Lamberton expressed the opinion that such a trust fund is not a part of the ward's estate, and the guardian has no rights, duties or liabilities in regard to such funds, having no power, except by agreement of the cestuis que trustent to use either the principal or interest for the support of the ward or to change the investment thereof: In re Newkirk, 27 D. & C. 675. We think this opinion is somewhat too broad. In view of the fact that there is in the depositor of the trust account the right to deal with it as his own, even to the extent of withdrawing the entire fund, the court would, no doubt, have power, on equitable principles always applicable to trust relationships, and, as a matter of public policy, to order the withdrawal out of such a voluntary trust fund of sufficient funds, at least to support the grantor-ward, so that he would not become a public charge, and to provide for his decent burial in case of his death, if he had no other estate. However that may be, the release by the cestuis que trustent of the trust fund in this case, of their interest, for the limited purpose of making funds available necessary for the support and maintenance of the incompetent, was a purely gratuitous and voluntary arrangement on their part, in no way affecting their legal right to the fund.

The guardian having filed its account here, as though the entire fund had come into its possession in some legal way, the question presented (for the first time in Pennsylvania, so far as we have been able to ascertain) is whether the balance of the fund so deposited "in trust" for another, is subject to inheritance taxes. The answer to that question may be found in the answer to the question as to whether or not, in the case of the death of the trustee of such an account as we have here under consideration, there is a transfer to the cestuis que trustent of the decedent's property at his death, within the meaning of the Act of June 20, 1919, P. L. 521, because it is only in such cases that the tax is imposed: where the transfer is $(a)$ by will, $(b)$ under the intestate laws, $(c)$ by deed, grant, bargain, sale or gift, made in contemplation of death or intended to take effect, in possession or enjoyment, at or after such death, $(d)$ an expectancy, contingent, or defeasible transfer. There is no need to consider $(a)$, $(b)$ and $(d)$. Under $(c)$, there is no evidence that the deposit here involved was transferred by the owner of it "in trust" for his two sisters in contemplation of death when he did so. It is argued, however, on behalf of the Commonwealth, that, because the nature of the trust was such that it was not intended to take effect, in possession or enjoyment, until the death of the trustee, and he in the meantime had the right to withdraw moneys therefrom and to revoke it entirely by exercising the right to withdraw the entire fund in his lifetime, the balance payable to the beneficiaries of the fund at his death is properly subject to the tax.

It is quite true that where a person makes a deposit of the kind we have under consideration in his own name, as trustee for another person, if there is nothing more, the law recognizes the reserved right in the trustee to withdraw the whole or any part of the trust, at any time during his lifetime, or to revoke the trust. However, as to any part of the fund remaining on deposit on his death, if the trustee has not revoked the trust, the trust is en-

forcible by the beneficiary upon the death of the depositor: A. L. I. Restatement of Trusts, §58; Gaffney's Estate, 146 Pa. 49; Scanlon's Estate, 313 Pa. 424; Pozzuto's Estate, 124 Pa. Superior Ct. 93.

The question involved really turns on whether any interest was created in the cestuis que trustent in the lifetime of the trustee. The last case cited is authority for the proposition that the very form of such a deposit creates (p. 99) : "an immediate interest . . . in the donee, subject only to revocation by some unequivocal act". It is so a fortiori in the instant case, because the right of the cestuis que trustent here does not arise merely out of the form of the deposit but we have a formal written transfer of the deposit to them as beneficiaries by the words: "I hereby transfer the within account, in trust, for my sisters, etc." It is not at all certain, in view of this formal transfer of the account, in trust, for the beneficiaries named, of which they were advised, that it was revocable at the will of the transferor. If it be assumed that there was such a right reserved in him, it is an immaterial consideration, because he did not exercise it. The right of revocation upon which the Commonwealth lays so much stress is not controlling. In the early case of Dickerson's Appeal, 115 Pa. 198, a father bought stocks and bonds, which he transferred on the books of the various companies to himself, as trustee for his children, executing certain declarations of trust in relation thereto. Subsequently, by his will, declaring the existence of the trust, he set out that they were purely voluntary, and gave certain directions which qualified, to some extent, the previously declared trust. The court held that since there was no revocation of the voluntary trust, made by the father, in his lifetime, for the benefit of his children, they would have to be treated as gifts inter vivos, and the stocks and bonds could not be considered part of the personal estate of the father at the time of his death. See also, Lines v. Lines et al, 142 Pa. 149; Smith's Estate,

144 Pa. 428; Windolph v. Girard Trust Co., 245 Pa. 349; and Dolan's Estate, 279 Pa. 582, 589 in which it was said:

"Through the exercise of that right reserved, the property may be recalled. But the right to revoke, unexercised is a dead thing." Also on page 590: "If the right is not exercised during the lifetime of the donor according to the terms reserved, the validity of the trust remains unaffected as though there never had been a reserved right of revocation."

In the instant case, there was one of two methods by which it was possible for the depositor to exercise what may be termed the right of revocation of the voluntary trust created by him (we will treat it as such, notwithstanding the formal transfer of the fund for the benefit of the beneficiaries). He could have withdrawn the entire fund in his lifetime, or he could have revoked it by will and made other disposition of the fund by specific reference thereto. The trustee did not do either while compos mentis, and, on October 14, 1935, he was declared incompetent, and a guardian appointed for his estate, so that he could not, thereafter, have taken any action in relation to the fund, unless he thereafter became compos mentis again and was so declared by the court, which never occurred, and, as stated, he died on August 30, 1937, while still incompetent.

If, as stated in Pozzuto's Estate, supra, the very form of the deposit "in trust" for the claimants gave them "an immediate interest" therein, subject only to the right of revocation, which was never exercised, it must follow that the transfer of the deposit of the decedent "in trust" for the claimants must be regarded as a gift inter vivos, as such a trust declaration was construed in Dickerson's Appeal, supra.

The meaning of the cases on the subject seems to be this: When one makes a deposit of money, or transfers a deposit, "in trust" for another, there is created in the intended beneficiary of the trust account "an immediate interest" therein, but tentative in character, because

subject to revocation by the depositor-donor. However, if the right of revocation is not exercised by the donor in his lifetime, or in his will, it is as though the right of revocation had never existed, so that what was "an immediate interest" in the donee, but tentative in character, becomes, through the non-action of the donor (in not exercising the right of revocation), absolute, and the interpretation of the transaction is related back to the time of the creation of the trust or to the time of the last withdrawal of funds from the account by the donor, and the deposit "in trust" is regarded as a gift inter vivos as of that time. So construed, we do not have here the passing of any property to the claimants from the decedent at his death, so that the balance of the fund in the trust account is not subject to the payment of any collateral inheritance tax.

Accordingly, it is directed that the entire balance for distribution, in the sum of $2,450.17, be paid to the claimants, Ellen S. Mines and Sidney J. Mines.