## Reimold v. Potter Bank and Trust Co.

Before Soffel, Duff and Cercone, JJ.

*Alvin J. Ludwig* and *Michael J. Georgalas*, for plaintiff.

*Prichard, Lawler & Geltz*, for defendant.

SOFFEL, J., May 28, 1958.—Fred G. Reimold and Elsie E. Reimold, his wife, brought suit in assumpsit against Potter Bank and Trust Company, trustee for Ira C. Mason, seeking to recover by attachment execution moneys of Ira C. Mason in the hands of said bank.

These are the essential facts:

1. On September 7, 1950, Ira C. Mason entered into an inter vivos trust with Potter Bank and Trust Company. By deeds, as recorded in the Recorder's Office of Allegheny County, Mason conveyed to the Potter Bank and Trust Company as trustee four parcels of real estate, identified in the trust agreement, a copy of which designated exhibit A is attached to the complaint.

2. The pertinent sections of the trust agreement are these:

"During the lifetime of the Donor, the Trustee shall collect the income from the Trust Fund, and shall distribute the net income from said Trust Fund to the

Donor at reasonable intervals, for and during the term of his natural life.

"During the lifetime of the Donor, he shall have the right to withdraw a part or all of the principal of the Trust, and he shall have the further right to revoke, alter or amend this Trust, in whole or in part, upon giving reasonable notice, in writing, to the Trustee.

"Upon the death of the Donor, the Trust Fund herein established, and any additions thereto, shall continue in Trust, and be held by the Trustee for the following uses and purposes:

"1. The Trustee shall collect, receive, hold, manage, invest and re-invest the Trust Fund only in such securities and investments as are known as legal securities or legal investments under the laws of the Commonwealth of Pennsylvania, and shall pay the net income therefrom to the Donor's wife MARY ELIZABETH MASON, the Donor's daughters, MARY ESTELLE MASON and VIVIAN VIOLA MASON, and the Donor's sister, JUANITA WINSTON, in the following proportions:

"(a) Two Hundred ($200.00) Dollars per month to the Donor's wife, MARY ELIZABETH MASON;

"(b) Two Hundred ($200.00) Dollars per month to the Donor's daughter, MARY ESTELLE MASON;

"(c) Two Hundred ($200.00) Dollars per month to the Donor's daughter, VIVIAN VIOLA MASON; and

"(d) Sixty ($60.00) Dollars per month to the Donor's sister, JUANITA WINSTON."

3. On or about January 11, 1955, Ira C. Mason and Melvin Harris entered into a partnership and operated a business known as M. & H. Market. The market occupied a storeroom in property owned by the Reimolds in Ross Township, Allegheny County, under a written lease providing for the payment of rental at the rate of $200 per month. The business failed. The partner, Melvin Harris had no assets. Attempt was made to

collect the debts of the partnership, including the rent, from Mason. By virtue of a clause in the lease authorizing confession of judgment, the Reimolds entered judgment against Mason and his wife and Harris and his wife in the sum of $12,886.25 for the unexpired term of the lease. By attachment execution the assets in the hands of Potter Bank and Trust Company, trustee for Mason, were attached.

4. On February 10, 1956, Ira C. Mason made an assignment to the Reimolds, which was accepted by the Potter Bank and Trust Company.

5. The pertinent section of said assignment reads as follows:

"THIS ASSIGNMENT made and entered into this 10th day of February, 1956, by IRA C. MASON

To

"FRED G. REIMOLD and ELSIE E. REIMOLD, his wife,

"WHEREAS, FRED G. REIMOLD and ELSIE S. REIMOLD, his wife, at D.S.B. No. 405, April Term, 1956, in the Court of Common Pleas of Allegheny County, Pennsylvania, entered judgment against MELVIN HARRIS and PEARL HARRIS, his wife, and IRA C. MASON and MARY MASON, his wife, in the sum of $12,886.25 on a lease and subsequently at Fi. Fa. No. 134 April Term, 1956, levied on the goods and chattels of the Defendants at the leased premises at Sangree Road and Thompson Run Road in Ross Township and also at Attachment Execution No. 508 April Term, 1956 attached the goods and monies, etc., of the Defendants in the hands of Potter Bank and Trust Company as Garnishee, and

"WHEREAS, IRA C. MASON has paid to said REIMOLDS all the rent and utilities due for said leased premises through the month of January, 1956, in addition to a $200.00 attorney fee for collection, and

"WHEREAS, the said IRA C. MASON has further agreed to pay to said REIMOLDS rental of the rate of $200.00 per month for said premises for the expiration of said lease or until such time as said premises are re-let, either by said REIMOLDS or by the tenants with the consent of said REIMOLDS, and

"WHEREAS, Potter Bank and Trust Company as Garnishee, in answer to Interrogatories filed upon it has advised said REIMOLDS that it has in its hand certain funds belonging to the said IRA C. MASON, and

"WHEREAS, it further appears that Potter Bank and Trust Company is trustee for said IRA C. MASON under a voluntary trust wherein said bank collect certain income for the said IRA C. MASON.

"Now, THEREFORE, THIS ASSIGNMENT WITNESS-ETH:

"FIRST: In consideration of said REIMOLDS settling and discontinuing their Attachment Execution at No. 508 April Term, 1956, and thereby releasing any funds, etc. of said IRA C. MASON which is attached in the hands of Potter Bank and Trust Company, the said IRA C. MASON does hereby sell, assign, transfer and set over to FRED G. REIMOLD and ELSIE E. REIMOLD, his wife, from the income received by Potter Bank and Trust Company as trustee under said voluntary trust, the sum of $200.00 each and every month hereafter until the expiration of said lease, which expires on December 31st, 1959, and the said Potter Bank and Trust Company is hereby authorized and directed to pay, each and every month hereafter, to Alvin J. Ludwig, Attorney for said FRED G. REIMOLD and ELSIE E. REIMOLD, his wife, said sum of $200.00 until the expiration of said lease or until such time as it is notified in writing by James Lawler, Attorney for said IRA C. MASON and Alvin J. Ludwig, Attorney for said REIMOLDS that said assignment has been cancelled; the first of said monthly payments to be due and payable

on the first of February, 1956. It is further agreed by said IRA C. MASON that the voluntary trust and the collection of income by said Potter Bank and Trust Company shall be irrevocable and shall continue as long as this assignment to said REIMOLDS is in effect.

"IN WITNESS WHEREOF the said IRA C. MASON has hereunto set his hand and seal this 10th day of February, 1956, fully intending to be legally bound thereby.

/s/ IRA C. MASON [SEAL]"

6. The acceptance of assignment reads as follows:

"POTTER BANK AND TRUST COMPANY does hereby acknowledge receipt of the above Assignment and does hereby agree to pay said sum of $200.00 from the income it collects on account of said voluntary trust for IRA C. MASON, to Alvin J. Ludwig, Attorney for Fred G. Reimold and Elsie Reimold, his wife, as set forth in said Assignment.

/s/ John Duff, Trust Officer
Potter Bank and Trust Company"

The issue in this case is the narrow legal question, to wit, whether rents accumulating in the trust since the death of Ira C. Mason are to be controlled by his assignment to the Reimolds. This court has no jurisdiction over funds in the Mason estate. That jurisdiction is exclusively in the orphans' court, but this court has authority to determine the instant question of law. It thus becomes necessary to consider the language of the trust and the assignment.

The important question for the court to consider is whether the assignment of February 10, 1956, signed by Ira C. Mason, is binding upon the trust estate after the death of Mason. There is no question that at the time Mason executed the assignment legal title to the trust and the assets therein, including the rents collected from the real estate and to be collected in the future, was not in Ira C. Mason, but in Potter Bank and Trust Company, trustee for Ira C. Mason. The

bank was not a party to the assignment. However, it did accept the assignment. By its acceptance the bank was obligated to pay the sum of $200 per month until expiration of the lease or until notice of its cancellation.

During the lifetime of Mason, the Potter Bank and Trust Company did pay to the Reimolds the sum of $200 per month. At that time only the interest of Mason, the donor of the trust, was affected. Since the death of Mason on May 25, 1957, the status of the parties has changed. There are now other parties in interest, to wit, the beneficiaries under the trust. The bank has made no payments since the death of Mason.

The case is now before this court on preliminary objections of the Potter Bank and Trust Company which may be summarized as follows:

The complaint does not set forth a cause of action upon which recovery can be had at law; the assignment, exhibit B, ceased and terminated May 25, 1957, the date of death of Ira C. Mason; the legal liability of Potter Bank and Trust Company, as trustee, for monthly payments by reason of the said assignment was confined to income that had accumulated in the trust prior to the death of the said Ira C. Mason; all right, title and interest in and to the assets of the trust estate, accruing after the death of the said Ira C. Mason, passed to the beneficiaries of the said trust on May 25, 1957, the date of death of the said Ira C. Mason, donor of the trust.

The question for determination is this:

Is the assignment of February 10, 1956, signed by Ira C. Mason, binding upon the trust estate after the death of Mason?

A review of the authorities in this area failed to reveal a single case in any jurisdiction precisely on point and so it appears that the court is not bound by stare decisis. A review of the authorities and the

principles applicable to this case indicate that there are two possible solutions to this problem, both of which appear to be tenable. Because this decision is a matter of discretion and interpretation, a discussion of both possible solutions appears to be in order.

The law is well settled that a party may only assign that which he owns: 6 C. J. S. 1054, §9, states:

"To be assignable, an estate or interest in property, as a general rule, must have an actual or potential existence and be in the actual or potential possession of the assignor at the time of the assignment; rights growing out of circumstances which do not yet exist are not assignable, even for value, for there is no subject matter on which to operate."

The decisions of the Pennsylvania Supreme Court are to the same effect. In Lennig's Estate, 182 Pa. 485, 38 Atl. 466, the Supreme Court held at page 496:

"In Kuhn's Est., 163 Pa. 438, our Brother WILLIAMS, delivering the opinion, said, 'At law a valid transfer can be made of anything in actual existence. What the assignor has he may dispose of. What he has not, although he may hope or expect to acquire it, he can make no title to. But such sales and assignments have been sustained in courts of equity whenever good conscience seemed to require it, and not otherwise. . . . If the consideration for such an assignment is a fair and honest one the assignment will be treated as an agreement to transfer when the assignee's title accrues, and it will be held to take effect as an assignment when the expectant interest vests in the assignor.' " Accord, Norris' Estate, 329 Pa. 483, 198 Atl. 142; Fisher's Estate, 302 Pa. 516, 153 Atl. 736.

In view of this principle, it is necessary to determine the interest in the trust estate which the donor Mason had at the time that he made his assignment.

There can be no doubt that legal title to the trust fund passed to the trustee bank on the day of the conveyance and that the donor who was also a life beneficiary retained for himself, in addition to the income for life, only the right to modify, alter, amend or revoke the trust. It is equally well established law that the remaindermen in this trust, the donor's wife, two daughters and one sister, at the date of the conveyance, obtained a vested interest in the trust fund subject to divestment by the donor upon exercise of his power of revocation. Thus the remaindermen had a vested interest at the time of the creation of the trust subject to divestment or modification by the donor in his lifetime.

The trust instrument reserved to the donor the right of modification and revocation and provided that this right would take effect upon the donor giving reasonable notice, in writing, to the trustee. Thus it becomes necessary to determine whether the instrument of assignment constituted sufficient notice to the Potter Bank and Trust Company of the donor's intention to alter, modify, amend or revoke the trust instrument.

The applicable provisions of the assignment are as follows:

". . . The said Ira C. Mason does hereby sell, assign, transfer and set over to Fred G. Reimold and Elsie E. Reimold, his wife, from the income received by Potter Bank and Trust Company as trustee under said voluntary trust, the sum of $200.00 each and every month hereafter until the expiration of said lease, which expires on December 31st, 1959, and the said Potter Bank and Trust Company is hereby authorized and directed to pay, each and every month hereafter, to Alvin J. Ludwig, Attorney for said Fred G. Reimold and Elsie E. Reimold, his wife, the said sum of $200.00, until the expiration of said lease or until such time as it is notified in writing by James Lawler, Attorney for said Ira C. Mason and Alvin J. Ludwig, Attorney for said

Reimolds, that said assignment has been cancelled;
. . ."

The law is clear that a trust instrument may be modified only in accord with the terms of the agreement. This principle is set out in 89 C. J. S. 889, Trusts, §87c (1), as follows:

"The right to amend a trust instrument may be exercised in conformity with the power reserved in the instrument, and an effective modification may be made only by pursuing the mode prescribed by the trust instrument. . . . The settlor's intention as to the mode of exercising the power is to be drawn from a consideration of the entire instrument. Where no method of exercise of the power reserved is specified, alteration powers may be exercised in any manner sufficiently manifesting an intention to alter."

The question thus narrows to whether the assignment was a reasonable means of notice to the trustee that the trust was altered or modified. This is the point where it might be said that either the contention of plaintiff or defendant could be upheld.

For defendant it could be said that the trust was not modified as required by the trust instrument, for at no time did the assignment ever specifically state that the donor intended to alter or change the rights of the beneficiaries or their interest in the trust. Thus the assignment might be construed only as an assignment of the rights of the donor under the instrument.

The acceptance by the bank is stated in general terms. Defendant argues that the acceptance must be held to be only of the assignment of the donor's rights to $200 a month during his lifetime which the bank collects under the trust, and not an acceptance or recognition that the trust had been altered, modified or affected in any manner.

The second possible interpretation which favors plaintiff is that though it is true that the creator of the

trust could not assign more than he had which was the right to the income from the trust for life, he nevertheless had the unequivocal right to alter, modify, amend or revoke the trust.

Though it is true that the method of revocation provided by a deed must be strictly followed (Shapley Trust, 353 Pa. 499, 46 A. 2d 227; Reese's Estate, 317 Pa. 473, 177 Atl. 792), it is also true that in Pennsylvania the intention of the donor is the primary guide to be followed in construing a deed of trust: Damiani v. Lobasco, 367 Pa. 1, 79 A. 2d 268. In that case the court stated, at page 7:

"Equally well established is the principal that 'since the settlor had it in his power to define exactly what was to be given and what reserved, he shall be held to have intended to give everything not expressly reserved and the writing will be construed most strongly against him, every inference of law being drawn in favor of his grantee: . . .' "

It might well be said that the trust instrument was not specific in its directions for amendments, revocations, etc., and hence any reasonable means in writing should be sufficient. As to modification of the trust instrument, A. L. I. Restatement of the Law of Trusts §333(1) and (1)(c) states:

"(1) The settlor has power to modify the trust if and to the extent that by the terms of the trust he reserved such a power . . .

"(c) *Where no method of modification specified.*

If the settlor reserves a power to modify the trust but does not specify any method of modification, the power may be exercised by any method which sufficiently manifests his intention to modify the trust."

The court in Bonsor Trust, 6 Fiduc. Rep. 371, held, at page 372:

"When a revocable deed of trust placed no restrictions on the method of amendment, all the surrounding

circumstances were examined in finding that settlor's letter to her attorney instructing him to prepare a 'new amendment' and her sending a signed copy of that letter to her trustee constituted an effective amendment." (Syllabus)

It is equally clear that the assignment upon which this suit is predicated and which was accepted by a trust officer of the trustee bank is sufficient and reasonable notice of the donor's modification and alteration of the trust. Contrary to defendant's contention that it is "ridiculous to assume that Mason ever contemplated when he entered into the assignment, that the storeroom would be vacant for 48 months", is the express provision in the assignment that the $200 was to be paid each month until the termination of the lease in December 31, 1959, or unless the property was leased to another. Thus there can be no doubt that the donor foresaw the possibility that the creditor might not be able to lease the property during the period of the contract. It might be said that the donor did not anticipate his death prior to 1959, but this would be but a surmise. To hold that an honest debtor having the power to obtain assets to pay his debts should nevertheless attempt to deprive his creditors of their rights is to attach to the deceased a reputation other than that of an honest and reputable businessman. The assignment was accepted by a trust officer of the bank and would have been carried out had settlor or donor survived to the termination date of the lease.

Another term of the assignment which clearly indicates that the donor intended to alter the trust instrument is the clause which provides that the donor's power of revocation of the trust was void until the creditor had been paid. Certainly this is an indication that the donor thought the assignment would modify the trust instrument.

We are constrained to hold that the assignment was in fact a modification or revocation pro tanto of the trust for it established that the trustee was to pay a sum of $200 a month to the creditor until the end of the lease, to wit, December 1959, unless the property was leased. The effect of this modification was to alter the trust instrument so that the interest of the beneficiaries was postponed until the debt of the creditor was paid. We believe the language of the assignment clearly evidences this intent. That the assignor intended to pay the just debt which he owed to his creditor cannot be doubted. To hold otherwise would be inequitable, unjust and contrary to the expressed intent of the donor as revealed in the instrument of assignment.

Contrary to plaintiff's second contention that the creditor could have forced the debtor donor to exercise his power of revocation or modification against his will is the case of Murphey v. C. I. T. Corporation, 347 Pa. 591, 33 A. 2d 16 (1943), which held, at page 594:

"Nor was the estate given to the remaindermen testamentary in nature; the deed vested in them an immediate, beneficial interest, only the enjoyment and possession being postponed until the death of the grantors; in that connection it is not material that the grantors reserved to themselves the power of revocation or modification: Restatement, Trusts, §57(1) ; Dickerson's Appeal, 115 Pa. 198, 210, 8 A. 64, 69, . . . If the right of revocation is not actually exercised the validity of the trust remains as unaffected as if the power had not been reserved: Dickerson's Appeal, supra, 210, A. 69; . . . Although the estate in remainder is subject to the possibilty of its being divested by a revocation, 'the right to revoke, unexercised, is a dead thing': Dolan's Estate, supra, 589, A. 178 [279 Pa. 582, 124 Atl. 176]. Nor can defendant force Flint to exercise the power."

542

The Supreme Court in the Murphey case quotes and relies upon A. L. I. Restatement of the Law of Trusts §330, comment O, which states:

*"Powers of settlor's creditors where settlor has power of revocation.* Unless it is otherwise provided by statute a power of revocation reserved by the settlor cannot be reached by his creditors. If he revokes the trust and recovers the trust property, the creditors can reach the property; but they cannot compel him to revoke the trust for their benefit."* See also Scott on Trusts, §330.12, at pages 2409-2410.

The Murphey case has not been overruled and thus the law appears to be clear that in Pennsylvania a creditor may not force his debtor to exercise a power of revocation which he possesses on a trust where he does not retain for himself a general power of appointment. It is not necessary, however, to plaintiffs' case that their contention be upheld, for it is our finding that the donor did in fact exercise voluntarily his power to modify the trust.

*Order*

And now to wit, May 28, 1958, preliminary objections of defendant, Potter Bank and Trust Company, trustee, are overruled.

Eo die exception noted and bill sealed.