## J. P. LINES v. W. E. LINES ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY.

Argued March 12, 1891—Decided May 4, 1891.

[To be reported.]

1. It is the settled law of this state that during his life a man may exercise absolute power over his personal property, without his wife's consent: her rights attach thereto only at his death; and she cannot impeach,

as a fraud upon her, a voluntary gift of personalty made by her husband in his lifetime.

2. A court of equity in this state cannot by its decree take personal property, belonging to the estate of a decedent and situated in another state, at the time of his death, out of the hands of its custodian there, and transfer it to executors in this state; it can be reached only by ancillary letters of administration.

3. A voluntary deed transferring property to a trustee, to be distributed by him among specified beneficiaries at such time as in his discretion he should see proper, the income to be paid to the donor during life if the distribution be not made before his death, with a power of revocation reserved to the donor, is not a testamentary instrument.

4. A reserved right of revocation is not inconsistent with the creation of a valid trust. If the right be not exercised during the lifetime of the donor and according to the terms in which it is reserved, the validity of the trust remains unaffected, as though there never had been a reserved right of revocation: Dickerson's App., 115 Pa. 198.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 351 January Term 1891, Sup. Ct.; court below, No. 2 October Term 1890, C. P. in Equity.

On August 21, 1890, Jane P. Lines filed a bill in equity against William E. Lines, the Union Trust Company of New York, and others, averring that certain deeds of trust made by Jesse Lines, deceased, to William E. Lines and the Union Trust Company, respectively, wherein various persons named as defendants were designated as beneficiaries, were of a testamentary character, and were made with the express intent and purpose of defrauding the plaintiff, the wife of said Jesse Lines, of her lawful share of his estate as his widow, in case she survived him; that Jesse Lines died, testate, on July 22, 1890, and that on July 26th the plaintiff made her election not to take under his will but under the intestate law; praying for a decree that said trust deeds were testamentary and the assets therein mentioned continued to be the property of Jesse Lines, and on his death vested in his executors; for a decree that said trust deeds were null and void as against the plaintiff; for a decree that said assets be delivered to said executors for administration; for an injunction to restrain transfers thereof; and for general relief.

The bill was taken pro confesso against the Union Trust

Company. The other defendants having answered and issue having been joined, *Mr. William C. Shipman* was appointed examiner and master.

On January 19, 1891, the master reported, finding, inter alia, the following facts:

Jesse Lines died at his domicile in the city of Easton on July 22, 1890, in the 82d year of his age, leaving to survive him his widow, the plaintiff, but no legitimate children. William E. Lines, one of the defendants, was his putative son. The decedent left a will dated February 4, 1880, with two codicils, dated December 22, 1882, and June 24, 1885, respectively. The will and codicils were duly admitted to probate on July 26, 1890, by the register of wills of Northampton county, who, the same day, granted letters testamentary thereon to William E. Lines and four other persons, named therein as executors. Three of the executors were afterwards discharged by the Orphans' Court on their own petition. By the terms of the will, the widow was to receive $750 annually for life, to be increased to $1,000 annually, if in the judgment of the executors the latter amount should be necessary for her support; and also, the testator's furniture, for life. William E. Lines and certain other persons, defendants in this case, and nephews and nieces of the testator, were made residuary legatees, William E. Lines to receive one half of the residuary estate, and the other half to go to said nephews and nieces. On July 26, 1890, the plaintiff filed her election not to take under the terms of the will, and several days later notified the executors thereof.

On May 30, 1883, Jesse Lines had executed and delivered to John Brown a deed of trust, and on December 14, 1886, executed and delivered a supplement thereto. The trust thus created embraced the stocks and bonds in controversy in this proceeding, and was for the benefit of William E. Lines and the nephews and nieces aforesaid, its terms and provisions being substantially to the same effect as those of the deeds now in question. Early in 1887, however, John Brown renounced the trust.

On May 6, 1887, in the city of New York, Jesse Lines executed and delivered to the Union Trust Company of New York a deed transferring to the trust company certain corporate stocks and bonds of the aggregate amount of $146,100, upon trusts specified in the deed as follows:

### Statement of Facts.

" First. To take the custody and care of said property and collect interest and dividends thereon.

" Second. To pay over such interest and dividends to first party for and during his natural life.

" Third. On the death of the first party, to divide the said property into two equal parts, and to transfer and deliver unto his putative son, William E. Lines, one of the said parts, and in case his putative son shall not be living at the time of his decease to transfer and deliver the same to such person or persons as his said putative son shall have appointed by instrument in the nature of a last will and testament, and in default of such appointment, to the persons who under the law of the state of Pennsylvania would be entitled to the beneficial interest in personal property of his said putative son as heirs or next of kin, and to divide the other of said two equal parts into fourteen equal parts, and to transfer and deliver one of such fourteen equal parts to each of the ten children of his deceased sister, Mary Fairchild, the said ten children being named as follows: . . . . ; and to transfer and deliver one of such fourteen equal parts to each of the four children of his brother, John Lines, the said four children being named as follows: . . . . .

" Fourth. In case, at the time of his decease, any of his said nephews or nieces shall not be living, to divide the part of said deceased nephew or niece into two equal parts, and to transfer and deliver one of such two equal parts to his said putative son, or in case his said putative son is not living at the time of his decease, to transfer and deliver one of such two equal parts to the appointee, or heirs or next of kin of his said putative son, in the manner as is provided in the foregoing third subdivision of this instrument; and to divide the other of such two equal parts into as many parts as there shall be of said nephews and nieces living at the time of his decease, and to transfer and deliver one of such parts to each of said nephews and nieces living at the time of his decease.

" Second party is entitled to just and reasonable compensation in the execution of this trust, and to the reimbursement of all charges and expenses made or incurred, to be deducted from the trust or assigned property.  First party reserves the right and power, by an instrument in writing to be delivered to

second party to alter, change, modify or revoke all disposition and direction as to transfer and dispositions made and to be made of said property after the decease of first party."

Appended to the deed was a supplemental agreement, providing that the charges of the trustee for collecting and disbursing income should be two per cent thereof, "and on transferring the principal, the legal commission allowed to executors and administrators for receiving and paying out money."

The securities mentioned in this deed were delivered to the trustee in the city and state of New York. In that state a married woman has no claim and possesses no title or interest in her husband's personal estate during his lifetime, and she has no right or privilege of taking his personal estate against his last will and testament. The master could not find as a fact that Jesse Lines carried said securities out of the commonwealth of Pennsylvania, to bring them under the operation of the laws of the state of New York. They were still in the possession of the trust company at the death of Jesse Lines. One half of them were transferred afterward to the beneficiaries named in the deed of trust, and the remaining one half remained in the possession of said company, which was restrained by an injunction of the proper court in the state of New York from transferring the said remainder to said beneficiaries.

On June 22, 1887, Jesse Lines executed and delivered to William E. Lines a deed of trust of certain other stocks and bonds, upon trusts declared as follows:

" To have and to hold all of said shares of stock unto the said William E. Lines, his executors, administrators and assigns upon the following trusts, to wit: In trust to divide the same into twenty-eight equal shares, of which he shall hold fourteen shares for the use of my putative son, the said William E. Lines, and of the remaining fourteen shares he shall hold ten, to wit, one each for the use of the ten children of my deceased sister, Mary Fairchild, named respectively: . . . . . And the remaining four shares he shall hold for the use of my brother, John Lines. During my life the said William E. Lines shall pay over to me and for my use, at the times when he may receive the same, all the dividends or other income which he may receive upon and from all of the above described stocks,

Statement of Facts.

and he may deliver the shares thereof above mentioned unto the several beneficiaries above named, at such time or times as he in his unfettered discretion shall think fit.   And should he in the exercise of his discretion determine to hold the same during my life and thereafter, he may after my death pay the income thereof to the said beneficiaries respectively, and in their several proportions, until such times as he may see fit to transfer the principal of the said shares to the persons entitled thereto respectively.   The four shares of the said stocks to be held in trust for my brother, John Lines, shall, when received by the said John Lines, be held by him in trust for his four children, one share to each, to wit: . . . . , and he shall pay the same over to his said children at his discretion, or he may pay the income of any share or shares to any one or more of the said children, as he may think proper, annually, until such time as he shall see fit to pay over the principal thereof to the said beneficiaries.   In case any of the beneficiaries hereinbefore mentioned shall die before the delivery to them respectively of the proper share or shares of the said stocks, without leaving any lawful issue or lineal descendants, the said trustee shall thereafter hold such share or shares upon the following trust or confidence, viz.: One half of such share or shares for the use of my putative son, William E. Lines, the said trustee, and the other half part thereof for the use of the survivors of the said beneficiaries, to be paid over to them in equal shares in the same manner and on the same terms in all respects as is hereinbefore directed as to the principal shares held for them respectively.

"I hereby reserve to myself the full right and power to revoke any or all of the provisions of this deed of trust at any time I may think proper so to do, and in case of my so doing, the said trustee shall thereupon forthwith deliver the said stocks to me, from which time they shall be free and discharged from the said trusts."

All the securities so transferred to William E. Lines were still in his possession, and he averred his intention of making distribution of the same according to the directions of the deeds of trust under which he held.

The three recited deeds of trust to John Brown, the Union Trust Company of New York and William E. Lines, respec-

tively, and the securities delivered along therewith, were intended by Jesse Lines to pass the title and ownership of the said securities to the said trustee for the benefit of the beneficiaries therein named, so as to diminish the quantum of his estate and to exclude his executors from the legal succession thereto, and thereby exclude his wife from any claim or right thereto under the intestate laws of Pennsylvania. This finding was based exclusively upon the instruments themselves. No provision was made for his wife therein, and the finding was therefore nothing more than inference from the act as a natural consequence.

Upon the facts so found, the master elaborately reported his conclusions of law, in substance as follows:

1. A man has a right, by voluntary gift inter vivos and without consideration, to donate his personal property so as to exclude any posthumous claim of his widow, and may lawfully do so if, in point of fact, in truth and in substance, he parts with the title; but if, by evasive forms and meaningless acts and nominal transfers, he seeks to retain his title for himself only, whilst attempting to put it beyond the reach of his wife, it is a badge of fraud and his object fails.

2. So far as the beneficiaries in the trust deed to the Union Trust Company of New York were concerned, the decree asked for by the plaintiff could not be granted in any aspect of the case. If that deed were testamentary, and the assets in the hands of the trust company were a part of the estate of Jesse Lines, their transfer to the forum of his domicile could be effected only through an ancillary administration in the state where the property was situated.

3. Neither of the trust deeds in question was testamentary, but each passed a present vested interest, transferring the title of Jesse Lines to the respective trustees immediately upon their execution.

4. The will of Jesse Lines did not operate, under § 3, act of June 4, 1879, P. L. 88, as an execution of the power of revocation reserved by him in the trust deeds, such reserved power not being the "power to appoint" to which the statute applies; nor could the plaintiff, while claiming against the will, invoke its aid as an execution of any such power.

The master, therefore, recommended a decree that the plaint-

Opinion of Court below.

iff's bill be dismissed, and that the costs be paid by the executors of the will of Jesse Lines out of the funds of the estate.*

Exceptions having been filed to the report of the master, after argument thereof, the court, ALBRIGHT, P. J. 31st district, specially presiding, filed the following opinion:

The questions of law presented by the plaintiff's exceptions were raised before the learned master, and discussed and passed upon by him. In the opinion of the court, said questions were correctly decided and the decree recommended can be made upon the master's opinion. It is scarcely necessary to add thereto.

[ It is a fact that plaintiff's husband, at least ten years before his death and before he made his last will or any of the deeds of trust in evidence, formed the fixed purpose that, beyond the use of the house furniture and a comparatively small yearly sum (probably not more than one fifteenth of the income of his estate, which was mostly personalty), his wife, if she survived him, should receive no part of his estate if he could prevent it ; that, as to as nearly as possible all his personal es-

---

* The reasons given by the master for his recommendation upon the subject of the costs were as follows :

As to the matter of costs, it is usual to impose them upon the party to the record who fails in the action. But in this case I have felt a repugnance of conscience against enforcing the rule. Sitting on the equity side of the court, pro hac vice as a chancellor, the matter of imposition of the costs is discretionary with a master.

My personal opinion is that this is a case of hardship upon this plaintiff, and the eloquent addresses of her counsel upon the barbarity of the law which permits a man to deprive his family upon his decease of a fair allowance for their support, were unanswered and are unanswerable. All through this report I have been restrained from the doing of equity by reason of the rigid rules of law, which equity in this case must follow ; and now, as the costs can be disposed of upon equitable principles, I will avail myself of the opportunity and save the plaintiff from their payment.

The executors of Jesse Lines are defendants. This suit will relieve them of the defence which they would have made, if the plaintiff had asked to surcharge them, as was done in Dickerson's Appeal, 115 Pa. 198, in the audit of their accounts. In such a proceeding the costs of that contest would undoubtedly have been paid out of the fund for distribution. That order can be made here. I believe it would be eminently just and equitable to do so, and therefore so recommend.

tate he would so contrive as to prevent her from receiving any part thereof by virtue of a claim under the intestate laws; and at the same time he would continue to have the income and use of his entire estate and retain control of it including the power to direct its disposition after his death; that he persisted in said purpose until death, and to carry it into effect all said deeds of trust were made.] [a]

The strongest support of the position that the deeds of trust were in fraud of the wife's rights, is the case of Thayer v. Thayer, 14 Vt. 107 (39 Am. Dec. 211). There a husband, a short time before his death, in expectation of soon dying conveyed all his real and personal estate to his son, in trust for said son and other children of a former marriage, without valuable consideration and for the purpose of defrauding his wife's right of dower and share in his estate. At the same time the husband leased the property from the trustee for his life at a nominal rent. It seems that the rights of a widow in that state at the time in question, 1842, were substantially the same as they are now in this state. The conveyance was set aside as to both real and personal property, at the instance of the widow. One of the grounds assigned for the decision was that the husband had in no way abridged himself of the control of the property, and that the gift was not consummated. Another ground was that the wife, in the lifetime of her husband, had such rights as ought to be recognized and enforced; that the attempt to elude them was mala fide, a fraud upon the law and the marital rights of the wife, and that the husband, so far as the widow was concerned, was to be regarded at the time of his death as being the owner of the property in question.

Whether the decision would have been the same if there had not been the element of retained use and control is somewhat uncertain. The reasoning employed indicates that it would probably have been. If that case is to be understood to decide that even if the husband had parted with the property absolutely, the gift would still have been void as to the widow, simply because he intended to prevent her from obtaining a share thereof under the intestate laws, this court is of the opinion that it cannot be followed.

No one can successfully contend that it is a fraud in contemplation of law to deprive one of that to which he had no legal right.

⌐ [While the married women's act of 1848 permits a widow to claim and receive against her husband's will a share in the personalty he died possessed of, there is no statute of this state vesting the wife during coverture with an interest in her husband's personal property, and there is no judicial decision recognizing the existence of such interest. It seems beyond question to be the professional and judicial sentiment in this state that a wife has no interest recognized by law in her husband's personal property.] [1] Killinger v. Reidenhauer, 6 S. & R. 530, was a contest concerning a mortgage given by a husband, without consideration, for the sole purpose of preventing his wife from getting any part of the mortgaged premises. The contest arose after the mortgagor's death. The court said that the widow might be admitted to defend pro interesse suo; that the mortgage was not fraudulent as to any other claim of the widow than her right to one third, her matrimonial endowment; for the contingent increase under the intestate acts was at the husband's perfect disposition, and so far as he disposed of his estate the contingency never happened upon which said rights depended; that a man can never be said to commit a fraud on the contingent rights of others, where it depends on his own acts whether they shall ever exist; that the rights of the wife other than her common-law dower he could defeat in the same manner as he could the succession of his heirs.

" Who so ignorant as not to know that a husband may dispose of his chattels during the coverture, without his wife's consent and freed of every post mortem claim by her? " Chief Justice GIBSON in Ellmaker v. Ellmaker, 4 W. 89. In Pringle v. Pringle, 59 Pa. 281, Justice SHARSWOOD quoted said remarks of Chief Justice GIBSON, and said that at common law a man who is sui juris and compos mentis may give away all his personal property, so as to become himself and leave his wife and children penniless; that by the act of 1848 the husband cannot by his will deprive his wife of the share of his personal property to which she is entitled under the intestate laws, but as to personal property by gift inter vivos his power is absolute; that this is perhaps to be regretted, but it is too well settled to be shaken now. The two last named cases are referred to and the substance of what is above given is stated with approbation in Dickerson's App., 115 Pa. 198.

Opinion of Court below.

Lonsdale's Est., 29 Pa. 407, would seem at first glance to recognize an interest in the wife in the husband's personal property. A husband had assigned bonds without consideration to trustees for the benefit of his brothers, with the object to deprive his wife of a share therein under the intestate laws. The transfers were declared void as to the widow, but it was found to be a fact that the husband retained the bonds and received the interest after the assignment, and handed them over to the trustees after long continued intemperance had rendered him unfit to transact business. There can hardly be a doubt that if the husband parted with the property absolutely, while he was capable to contract, the conclusion would have been different.

Stress is laid by the plaintiff's counsel upon the use in Dickerson's Appeal, supra, and elsewhere, in discussing gifts of this nature, of the phrase "good faith." Evidently that expression must be understood to refer to the intent of the donor to divest himself of the ownership, not to the purpose to affect the wife. How can the motive concerning the wife, of the voluntary disposition by the husband, be material, inasmuch as the wife has no right in his goods ? If she had such right, the deprivation of it would be a fraud upon her, whether the intent had or had not been to prejudice her; a gift by the husband would be to her injury and consequently in fraud of her rights. In this case, the donor delivered the stocks and bonds mentioned in the deeds to the respective trustees, at or shortly after the time the execution and delivery of the deeds and the transfers of the shares and securities to the trustees were made. The certificates and books of the corporations show that the trustees were the holders of the stocks and the bonds in question. The transferees had the legal title, and the beneficiaries named had equitable interests. Valid, active trusts were created.

The only doubt that could arise upon the point, if it were an open question, would be upon the power to revoke contained in the deeds. In that to the trust company it is only as to the disposition of the property after donor's decease. But that the reservation of such power is not inconsistent with the creation of a valid trust is decided in Dickerson's Appeal, supra. That was material upon the question of the trust in favor of Mrs. Manning. "A reserved right of revocation is not inconsistent

Opinion of Court below.

with the creation of a valid trust. If the right is not exercised during the lifetime of the donor and according to the terms in which it is reserved, the validity of the trust remains unaffected, as though there never had been a reserved right of revocation : Stone v. Hackett, 78 Mass. 227. In that case, a delivery of railroad stock without a consideration, in trust to pay the income to the donor for life, and at his death to transfer the shares to charities, with a clause of revocation, was good against the widow, who claimed her share in the same as part of her husband's estate : " by Mr. Justice STERRETT. It will be observed that in the Dickerson case, in the trust for Mrs. Manning, like that in this, the donor had reserved the income.

The deeds to the trust company and to William E. Lines are not testamentary in their character ; they created present interests in the beneficiaries therein named. If an instrument conveys an estate in præsenti it cannot be a will, for that operates only in futuro : Jarman on Wills, 11 ; Greenfield's Est., 14 Pa. 489 ; Eckman v. Eckman, 68 Pa. 460. If it vests no present interest, but only appoints what is to be done after the death of the maker, it is a testamentary interest : Turner v. Scott, 51 Pa. 126 ; Frederick's App., 52 Pa. 338.

Entertaining the views above set forth, it is unnecessary to notice the exceptions in detail. The master has given good reasons for his action respecting the costs ; his reasons are approved and adopted. . . . .

Now, February 11, 1891, it is ordered and decreed that plaintiff's bill be dismissed, and the costs of the proceeding be paid by William E. Lines and Henry J. Meyers, executors of the will of Jesse Lines, deceased, out of the funds of the estate of said deceased in their hands.

—Thereupon the plaintiff took this appeal, specifying inter alia that the court erred :

1. In making the finding of law embraced in [ ],[1] in view of the findings of fact embraced in [ ] [a]

2. In not holding, upon the facts stated in the finding of the court embraced in [ ] [a], that the deeds of trust were wills in disguise, and in law testamentary as against the widow.

3. In holding that the deeds of trust were not fraudulent and void as against the right of the widow, upon the facts found by the master and the court.

17. In decreeing that the bill be dismissed.

18. In not granting the relief prayed for in the bill.

*Mr. O. H. Meyers* and *Mr. W. S. Kirkpatrick* (with them *Mr. R. I. Jones*), for the appellant:

1. Each of the instruments in question is testamentary in terms and effect, the trustees being mere agents, and no interest vesting in anybody until the death of Jesse Lines, prior to which it was not and could not be ascertained who were to take. They were ambulatory, and it is impossible to reconcile their essence with a present vested title: Turner v. Scott, 51 Pa. 126; Frederick's App., 52 Pa. 338; Rick's App., 105 Pa. 528; Green v. Rick, 121 Pa. 130; Gingrich's App., 1 Mona. 301; Hackett v. Commonwealth, 102 Pa. 505; Wilson v. Van Leer, 103 Pa. 601; Rose v. Quick, 30 Pa. 225; Fellows's App., 93 Pa. 470; Rife's App., 110 Pa. 232; Doe v. Cross, 15 L. J., N. S. (Eng.), 217; Gentry v. Baily, 6 Gratt. 604; Dennison v. Goehring, 7 Pa. 175; Ritter's App., 59 Pa. 1; Book v. Book, 104 Pa. 240; Withers v. Weaver, 10 Pa. 392; Moore v. Smith, 9 W. 407; Morgenthaler's App., 15 W. N. 441; McBride v. Smyth, 54 Pa. 245; Craige's App., 126 Pa. 223; Cannon's Est., 16 W. N. 544. Stone v. Hackett, 78 Mass. 227, and Dickerson's App., 115 Pa. 198, are readily distinguishable from this case, and Provenchere's App., 67 Pa. 463, has no application.

2. The circumstances of the case show a fraudulent contrivance on the part of Jesse Lines to defeat his widow's rights, retain control of his property and dispose of it after his death. The alleged agreements of trust are mere wills in disguise. As a fraud upon the plaintiff, they are invalid against her: Feigley v. Feigley, 7 Md. 537 (61 Am. Dec. 375); Hays v. Henry, 1 Md. Ch. 337; Padfield v. Padfield, 78 Ill. 16; Kerr on Fraud and M., 220, note; Lightfoot v. Colgin, 5 Munf. 402; Nichols v. Nichols, 61 Vt. 426; Thayer v. Thayer, 14 Vt. 107 (39 Am. Dec. 211); Holmes v. Holmes, 3 Paige 363; Mackason's App., 42 Pa. 330; Ghormley v. Smith, 139 Pa. 584; Gillespie v. Miller, 37 Pa. 247; Mitchell v. Kintzer, 5 Pa. 216; Kinzer v. Mitchell, 8 Pa. 64; Reinhard v. Keenbartz, 6 W. 93; Krupp v. Scholl, 10 Pa. 193; Montgomery Webb Co. v. Dienelt, 133 Pa. 585; Campbell's App., 80 Pa. 306; Jones v. Drake, 6

Arguments.

Phila. 421; Lonsdale's Est., 29 Pa. 407; Knorr's App., 89 Pa. 93; Reidenauer v. Killinger, 11 S. & R. 119; Petty v. Petty, 4 B. Mon. 215 (39 Am. Dec. 501); Swaine v. Perine, 5 Johns. Ch. 482; Smith v. Smith, 2 Halst. Ch. 515; Dearman v. Dearman, 10 Md. 191; Tate v. Tate, 1 Dev. & B. Eq. 22; Story's Eq. J., 13th ed., 273, n. (a); Blekinsopp v. Blekinsopp, 1 De G., M. & G., 495; s. c. 12 Beav. 586; 21 L. J. Ch. 404.

3. The reservation of the income and the powers of revocation render the agreements void as against the wife: 2 Roper on Husband and Wife, *15, 42; Turner v. Jennings, 2 Vern. 612, 685; Smith v. Fellows, 2 Atk. 62; Fortescue v. Hennah, 19 Ves. Jr. 67; Bell on Husband and Wife, Law Lib., 4th series, *222; Killinger v. Reidenhauer, 6 S. & R. 535; Lawley v. Hooper, 3 Atk. 278; Ross's App., 127 Pa. 4; Miskey's App., 107 Pa. 612; Pringle v. Pringle, 59 Pa. 281; Evans v. Dravo, 24 Pa. 62; Lonsdale's Est., 29 Pa. 407. But, under the act of June 4, 1879, P. L. 88, the will of Jesse Lines operated as an exercise of the powers reserved to him in the trust agreement, and made his disposition of the property testamentary, if it was not such under the original instruments: Thompson v. Garwood, 3 Wh. 306; Sugden on Powers, *354, 368, 369; 2 Crabb on Real Prop., §1985; Porter v. Turner, 3 S. & R. 108; 1 Story's Eq. J., §173; Parsons on Wills, Law Lib., *4; Tollet v. Tollet, 2 P. Wms. 489; Sneed v. Sneed, Ambl. 64; Mills v. Mills, 8 Irish Eq. 192; Wineland's App., 118 Pa. 37; Neale's App., 104 Pa. 214; Carl's App., 106 Pa. 635; Fidelity etc. Co.'s App., 108 Pa. 493; Aubert's App., 109 Pa. 448; Spooner's Trust, 9 Eng. L. & E. R. 103; Stillman v. Weedon, L. R. 15 Ch. D. 53; Hernando v. Sawtelle, L. R. 27 Ch. D. 184; White v. Randolph, L. R. 37 Ch. D. 143; Mason v. Thomas, L. R. 38 Ch. D. ——; Green v. Gordon, L. R. 34 Ch. D. 65; In re Clark, L. R. 14 Ch. D. 422; Freme v. Clement, L. R. 18 Ch. D. 499; Chandler v. Pocock, L. R. 16 Ch. D. 491; Roney v. Stiltz, 5 Wh. 381.

4. The case does not present any question of conflict of laws between this state and New York. Our contention is that the agreement made in New York is testamentary in substance and effect; that it was a mere device and scheme on the part of Jesse Lines to put it in the form of a trust, for the purpose of cheating and defrauding his wife; and it is nothing but a will

in disguise.　As such, it is governed by the law of Pennsylvania, Jesse Lines being domiciled here at the time of his death, and it is immaterial where it was executed.　But, if the acts of Jesse Lines would be a fraud upon his wife, in case the instrument had been executed in Pennsylvania, they are just as much so, wherever else it was executed.　It relates to a pretended transfer of his personal property, and in all such cases the transaction is governed by the law of the domicile of the owner of the property: 3 Am. & Eng. Encyc. of Law, 567, 568, 574; Story's Conf. of Laws, §§ 362, 380, 383; D'Joernors v. Leavitte, 23 Barb. 63; Speed v. May, 17 Pa. 91; Frotler v. Frotler, 3 Wils. & S. 407; Flagg v. Baldwin, 38 N. J. Eq. 219 (48 Am. Rep. 308); Forepaugh v. Railroad Co., 128 Pa. 217; Gardner v. Lewis, 7 Gill 377.

*Mr. Alexander Farnham* and *Mr. H. J. Steele* (with them *Mr. Frederick Green*), for the appellees:

Counsel cited:

(1.) Helfenstein's Est., 77 Pa. 328; Heartley v. Nicholson, L. R. 19 Eq. 233; Lewin on Trusts, 148; Perry on Trusts, § 82; Bond v. Bunting, 78 Pa. 219; Yard v. Patton, 13 Pa. 284; Candor's App., 27 Pa. 119; Pringle v. Pringle, 59 Pa. 289; Ross's App., 127 Pa. 10; Commonwealth v. Crompton, 137 Pa. 138; Smith's Est., 26 W. N. 364; Finney's App., 59 Pa. 398; Lewin on Trusts, 68; Dennison v. Goehring, 7 Pa. 175; Stone v. Hackett, 12 Gray 227; Bispham's Eq., § 66; Milroy v. Lord, 4 De G., F. & J., 274; Van Cott v. Prentice, 104 N. Y. 45; Hackett v. Commonwealth, 102 Pa. 505; Provenchere's App., 67 Pa. 463; Cunningham v. Cunningham, 3 Ga. 460; Boling v. Boling, 22 Ala. 826; Lightfoot v. Colgin, 5 Munf. 42; Greenfield's Est., 14 Pa. 489; Ritter's App., 59 Pa. 9; Eckman v. Eckman, 68 Pa. 460; Fellows's App., 93 Pa. 470; Mattocks v. Brown, 103 Pa. 16; 1 Jarman on Wills, 41; Thompson v. Brown, 3 My. & K. 32; Dickerson's App., 115 Pa. 198; Doe v. Considine, 6 Wall. 475; Minnig v. Batdorff, 5 Pa. 506; Moore v. Lyons, 25 Wend. 119; 4 Kent Com., 282; Williamson v. Field, 2 Sandf. Ch. 533; Fearne on Cont. Rem., 217; Wager v. Wager, 1 S. & R. 373; Blanchard v. Blanchard, 1 Allen 223; Chew's App., 37 Pa. 28; Penna. etc. Co.'s App., 109 Pa. 489.

Opinion of the Court.

(2) 1 Bl. Com., 449; 2 Kent Com., 440; 1 Wms. on Executors, 2; Pringle v. Pringle, 59 Pa. 285; Ellmaker v. Ellmaker, 4 W. 91; Stewart v. Stewart, 5 Conn. 317; Lonsdale's Est., 29 Pa. 407; Dickerson's App., 115 Pa. 198; Kerr on Fraud and M., 220, 382; Schwartz's Est., 17 Phila. 435; Lightfoot v. Colgin, 5 Munf. 42; Holmes v. Holmes, 3 Paige 363; Cameron v. Cameron, 18 Miss. 394; Sanborn v. Goodhue, 28 N. H. 48 (59 Am. Dec. 398); Padfield v. Padfield, 78 Ill. 16; Mead v. Conroe, 113 Pa. 220; Cummins v. Hurlbutt, 92 Pa. 165; Stine v. Sherk, 1 W. & S. 195; Irwin v. Shoemaker, 8 W. & S. 75; Rife's App., 110 Pa. 232; Ludwig's App., 101 Pa. 535; Smith's App., 115 Pa. 319; Neely's App., 124 Pa. 406.

(3) Lightfoot v. Colgin, 5 Munf. 42; Pomfret v. Perring, 5 De G., M. & G., 775; Palmer v. Newell, 20 Beav. 38; In re Merritt, 1 Sw. & Tr. 112; 2 Jarman on Wills, 282; Pettinger v. Ambler, L. R., 1 Eq. 510; Neale's App., 104 Pa. 214; Dickerson's App., 115 Pa. 210; Fowler's App., 125 Pa. 393; Commonwealth v. Duffield, 12 Pa. 277; Commonwealth v. Williams, 13 Pa. 29; Titusville I. Works v. Oil Co., 122 Pa. 627.

(4) Eby's App., 70 Pa. 311; Cookney v. Anderson, 31 Beav. 452; Story on Confl. of Laws, § 364, n. 2; Born v. Shaw, 29 Pa. 288; Scott v. Duffy, 14 Pa. 18; Baltimore etc. R. Co. v. Hoge, 34 Pa. 214; Reid v. Gray, 37 Pa. 508; Hullin v. Faure, 15 La. 622; Emery v. Clough, 63 N. H. 552 (56 Am. Rep. 543); Ames v. McCamber, 124 Mass. 85; Milliken v. Pratt, 125 Mass. 374; Martin v. Funk, 75 N. Y. 134 (31 Am. Rep. 446); Young v. Young, 80 N. Y. 422 (36 Am. Rep. 634); Willis v. Smith, 91 N. Y. 298; Van Cott v. Prentice, 104 N. Y. 45; Heard v. Stamford, 3 P. Wms. 409.

OPINION, MR. CHIEF JUSTICE PAXSON:

This case has been so intelligently and exhaustively discussed both by the learned master and the court below that I fear anything I may say will be but a repetition of what they have perhaps better said. It certainly renders an elaboration of it unnecessary.

The appellant objects to the deeds of trust to the Union Trust Company of New York and to William E. Lines for two reasons: (a) That they are in fraud of her rights as widow; and (b) that they are testamentary in their character. Hence

she asks that the said deeds be declared void as against her, and that the trustees may be decreed to hand over the securities, named in said deeds and remaining in their hands, to the executors of the will of Jesse Lines, deceased.

The first proposition cannot be sustained. It is the settled law of this state that a man may do what he pleases with his personal estate during his life. He may even beggar himself and his family, if he chooses to commit such an act of folly. When he dies, and then only, do the rights of his wife attach to his personal estate. She then becomes entitled to her distributive share, and of this she cannot be deprived by will or any testamentary paper. " Who so ignorant," said Chief Justice GIBSON, in Ellmaker v. Ellmaker, 4 W. 91, "as not to know that a husband may dispose of his chattels during the coverture, without his wife's consent and freed from every post mortem claim by her?" This point was expressly decided and thoroughly discussed by the late Justice SHARSWOOD in Pringle v. Pringle, 59 Pa. 281, where it was said that "a man's wife and children have no legal right to any part of his goods, and no fraud can be predicated of any act of his to deprive them of the succession." See, also, Dickerson's App., 115 Pa. 198. It is sufficient to announce a rule so firmly settled, without discussing it.

It remains to consider the second objection in connection with each of the trust-deeds. That it cannot be invoked in this proceeding, so far as the deed to the Union Trust Company is concerned, is clear for obvious reasons. That deed is a New York contract. It was made in New York; the deed was delivered in New York, and it was intended to be executed there. Moreover, the trustee is a New York corporation, and the securities in question were delivered there to the said corporation. It is almost needless to say that the Court of Common Pleas of Northampton county has no jurisdiction of a trust, where both the trustee and the trust-estate are in another state. Moreover, if it be conceded that this deed is of a testamentary character, it does not help the matter, so far as the present proceeding is concerned. If the securities held by the Union Trust Company are a part of the estate of Jesse Lines, it is nevertheless an estate situated in the state of New York, and a court of equity in this state cannot by its decree take it

Opinion of the Court.

out of the hands of its custodian there and transfer it to exec-
utors in this state. It can only be reached by ancillary letters
taken out in New York. It would then be subjected to the
payment of the debts of the testator in that jurisdiction, and
the balance only, after satisfying any such demands, would be
forwarded to the executors of the domicile. This is familiar
law. I may further add that the learned master has found as
a fact that by the law of the state of New York a married
woman has no claim and possesses no title or interest in her
husband's personal estate during his lifetime, and she has no
right or privilege of taking his personal estate against his last
will and testament.

It remains to consider the deed to William E. Lines. It was
said in Mattocks v. Brown, 103 Pa. 16 : " Many deeds convey-
ing and settling property contain provisions which become
operative only after the death of the grantor or settler, but
where a present interest passes to a trustee or grantee, it has
never been supposed that such instruments were of a testa-
mentary character." I do not propose to review the numerous
authorities cited and discussed by the learned master. I will
add, however, that Dickerson's App., 115 Pa. 198, is upon all
fours with the case in hand. There the owner of certain per-
sonal property imposed a trust upon it in favor of his children,
naming himself as trustee, and the trust was held valid, not-
withstanding the reservation of the income to himself and a
power of revocation.

When we come to examine the deed to William E. Lines, we
find an absolute conveyance to him of certain securities speci-
fied therein upon the following trusts :

" To have and to hold all of said shares of stock unto the said
William E. Lines, his executors, administrators and assigns,
upon the following trusts, to wit : In trust to divide the same
into twenty-eight equal shares, of which he shall hold fourteen
shares for the use of my putative son, the said William E. Lines,
and of the remaining fourteen shares he shall hold ten, to wit,
one each for the use of the ten children of my deceased sister,
Mary Fairchild, named respectively: . . . . And the remaining
four shares he shall hold for the use of my brother, John Lines.
During my life the said William E. Lines shall pay over to me
and for my use, at the times he may receive the same, all the

dividends or other income which he may receive upon and from all of the above-described stocks, and he may deliver the shares thereof above mentioned unto the several beneficiaries above named, at such time or times as he in his unfettered discretion shall think fit. And should he in the exercise of his discretion determine to hold the same during my life and thereafter, he may, after my death, pay the income thereof to the said beneficiaries respectively, and in their several proportions, until such times as he may see fit to transfer the principal of the said shares to the persons entitled thereto respectively," etc.

It is idle to call this a testamentary paper. It passed his entire legal title to the trustee, with a present interest. He parted with the property wholly and entirely. Even the reservation of the income to himself for life was optional with the trustee. The latter could have distributed the corpus of the estate to the beneficiaries the next day. The power of revocation reserved in the deed, having never been exercised, was precisely as if it had never existed. A reserved right of revocation is not inconsistent with the creation of a valid trust. If the right is not exercised during the lifetime of the donor, and according to the terms in which it is reserved, the validity of the trust remains unaffected, as though there had never been a reserved right of revocation: Dickerson's Appeal, supra; Stone v. Hackett, 12 Gray 227. There is nothing in this deed to indicate an intention to create a trust to take effect only after the death of the donor. On the contrary, the intent is clear to create a present trust in favor of the beneficiaries named therein, to take effect immediately with the execution of the deed. The securities passed into the hands of the trustee along with the trust-deed. The transaction was complete, and the donor was absolutely denuded of his property. It is useless to pursue the subject further. The appellant had no case, and her bill was properly dismissed.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.