## Stone Estate

*Charles H. Miner, Jr.,* for appellant.
*Frank Slattery, Jr.,* for Commonwealth.

JONES, P. J., March 5, 1952.—This is an appeal by the Wyoming National Bank of Wilkes-Barre, Pa., executor of the estate of Mary M. Stone, deceased, from

a transfer inheritance tax appraisal of decedent's estate.

Mary M. Stone, an aged person, died October 2, 1950. Letters testamentary in her estate were granted to the Wyoming National Bank of Wilkes-Barre, Pa. At the time of her death, decedent was a guest in the Home for Homeless Women, a nonprofit charitable corporation located in Wilkes-Barre, Pa., organized for the purpose of affording "shelter, food, clothing and other necessities of life to worthy women who have no home, and who, by reason of either age or other incapacities, are unable by their own exertions to obtain one".

Decedent on February 18, 1931 (the date of her admission to the Home for Homeless Women), executed an agreement under the terms of which she purported to "assign and set over to the Home of Homeless Women" all of her estate, real and personal, then owned or thereafter acquired by her.

The pertinent portions of this agreement are as follows:

"And in consideration of the care and attention of the managers and the expense of the establishment, and to the end that the quiet and comfort of the Home may not be disturbed in the event of my removal or death, but that all things may remain for my successors, I do hereby *assign and set over* to the Home for Homeless Women all money on deposit to my credit in any bank or other depository and all my other personal property whatsoever, including such utensils, beds, bedding and household goods and furniture as I have brought or shall bring to said Home for my own use.

"And, Whereas, although reduced, in the course of divining Providence to a state of dependence, the same kind Providence may hereafter bless me with the accession of property, so as to enable me to retire from

this Home, and possibly become a contributor to it, I do hereby further appoint the Treasurer of the above-named Home for the time being my attorney-in-fact to receive for me respectively, and to sell and dispose of all estates, real and personal, of every description to which I shall hereafter or may now be entitled, and to apply and use all the said estates for the support of the said Home; *provided only that if I permanently leave the said institution, then said Treasurer and her successor in office shall retain and use for the purpose aforesaid only, the sum of 500 dollars and such further sum as will reimburse said Home for my board and care at the rate of 3 dollars per week for the entire time I am and shall be an inmate thereof.*" (Italics supplied.)

From the date of decedent's admission to the home until the date of her death—a period of 19 years, 7 months and 14 days—decedent was continuously a guest in this home.

Decedent did not leave, permanently or otherwise, the institution and, therefore, the proviso in the agreement for the retention by the home of the sum of $500 and $3 per week for the board and care of decedent never became effective.[1]

At the time of her death, decedent had on deposit in her own name, in two savings accounts, in the Wyoming National Bank $6,303.24—the only assets, real or personal, in decedent's name.

On November 20, 1950, the Home for Homeless Women made claim upon the executor for the bank accounts of decedent upon the basis of a debt due under the agreement of February 18, 1931. The executor filed for transfer inheritance tax appraisal purposes a statement of debts and deductions wherein, inter alia,

---

[1] It will be noted that, had decedent permanently left the home just prior to her death, then under the agreement the treasurer of the home could have retained a sum of approximately $3,554.

it was claimed that the balance of the estate, to wit, $5,723.24, was deductible as a debt due the home under the agreement of February 18, 1931.[2]

The register of wills in his capacity as Commonwealth's agent disallowed the deduction of $5,723.24 and assessed a tax thereon at the prescribed rate. From the action of the register of wills in disallowing the claim of the home, this appeal is taken.

At the outset, it will be observed that the home has not taken the position that it became the owner of the amount of the bank accounts under the agreement of February 18, 1931, and the home claims that it became simply a creditor of decedent by virtue of the agreement. The theory of this appeal is that the home was a creditor of decedent, rather than that it owned the bank accounts.

Frequently, a prerequisite of the admission of a person to a charitable institution is the execution of a contract between the institution and the applicant for admission. Generally, this type of contract provides for the payment by applicant of a certain entrance fee, for a transfer to the institution of applicant's property, both real and personal (then owned or to be acquired), and for a probationary period during which either party can act to dissolve the contract.

The enforcibility of this type of contract is to be determined by the usual rules governing the validity of a contract. The validity of this type of contract generally has been sustained: (1) On the ground that it did not lack mutuality (Fidelity Union Trust Co. v.

---

[2] It will be noted that the executor claimed deductions for funeral and administration expenses in the amount of $580, which deductions were allowed. The figure of $5,723.24 disallowed as a deduction represented the difference between the balance in the savings accounts of decedent and the funeral and administration expenses.

Reeves et al., 96 N. J. Eq. 490, 125 Atl. 582 (1924));
(2) on the ground that consideration was neither lacking nor insufficient (Stoddard v. Gabriel et al. (1944), 234 Iowa 1366, 14 N. W. (2d) 737; Newburyport Society v. Noyes, 287 Mass. 530, 192 N. E. 54 (1934));
(3) on the ground that it was neither a gambling nor an unfair or unconscionable contract, but merely amounted to an assignment of property: Ressler's Estate, 18 D. & C. 393 (1933).

Judge Sinkler in Ressler's Estate, supra, held that such a contract was not against public policy on the ground that the assignor might thereby become a public charge because the very purpose of the arrangement was to provide support for the assignor for the balance of her life. In the Ressler case it will be observed that there was an assignment of personal property purportedly for a valuable consideration, although there was no transfer of possession and, further, that Judge Sinkler took into consideration that the per diem per capita cost at the institution, during the time decedent was a guest, was approximately the same as the amount paid by decedent during her lifetime, together with the balance in the hands of decedent's executor-accountant. See, also, 10 A. L. R. (2d) 865.

In the instant case counsel for the Commonwealth of Pennsylvania has not questioned either the validity, the legality or the enforcibility of the contract between decedent and the home.

The taxing statute, the Act of June 20, 1919, P. L. 521, as amended, 72 PS §2301, provides, inter alia:

"A tax shall be, and is hereby, imposed upon the transfer of any property, real or personal or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations in the following cases:
. . .

(c) When the transfer is of property made by a resident, . . . by deed, grant, bargain, sale, or gift,

made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death."

There being no contention that the transfer of property made by decedent was in contemplation of her death, a test of the taxability of the transfer in the instant case is whether or not the transfer was intended to take effect in possession or enjoyment at or after the death of decedent. If decedent irrevocably parted with all her interest, title, possession and enjoyment of her property during her lifetime, then the transfer is not taxable; if, however, decedent retained in her control any interest, title, possession or enjoyment as long as she lived, then the transfer is taxable: Reish v. Commonwealth, 106 Pa. 521, 525 (1884); Myers' Estate, 309 Pa. 581, 585 (1933); Cooper's Estate, 320 Pa. 418, 419 (1936); Jones' Estate, 350 Pa. 120 (1944); Glosser Trust, 355 Pa. 210 (1946); Todd Estate, 358 Pa. 530 (1948). Cf. Dolan's Estate, 279 Pa. 582, 588 (1924).

Did the agreement of February 18, 1931, create a transfer of property effective prior to the date of death of decedent? An examination of the agreement would indicate that decedent purported to assign and set over to the home all her property, real and personal, owned at that time, or later to be acquired by her. Under the agreement this assignment could only be set aside by an act on the part of decedent, to wit, her permanent removal from the institution, an eventuality which never occurred. Were it not for this provision in the agreement it would seem clear that the agreement purported to make an absolute, unconditional and outright transfer to the home of all of decedent's property. Decedent retained for herself no right to enjoy either the principal or the income from the property, but simply and solely retained the right to revoke

the assignment in the event that she permanently left the institution.

Did the retention of the power to dissolve or revoke the assignment indicate an intent on the part of decedent to make a transfer to take place only at the time of her death? In Dolan's Estate, 279 Pa. 582 (1924), Sarah Dolan by deed conveyed to the Fidelity Trust Company certain securities, in trust, for the benefit of her three sons for life, with remainder over. Under the deed of trust, Sarah Dolan provided, inter alia, that she had the power to revoke the trust. The Supreme Court, speaking through Mr. Justice Kephart (later Chief Justice) held that the annexation to the deed of trust of the power of revocation did not affect the settlor's power of enjoyment, nor did it prevent the sale of the property although the grantee took the estate with a possibility of a forfeiture by the happening of an uncertain event, to wit, the exercise by settlor of the power of revocation (p. 589). The court stated, inter alia:

"But the right to revoke, unexercised, is a dead thing. Its presence in a deed does not alter the character of the instrument or estate granted; to all intents and purposes, title and possession pass just as effectively as any deed or grant could make it, continuing in that state so long as the power of revocation lies dormant."

The court held that the securities had vested in the three sons of Sarah Dolan prior to the passage of the Inheritance Tax Act and the conveyance was not taxable as a transfer intended to take effect in possession or enjoyment at the death of Sarah Dolan.

In Murphey et al. v. C. I. T. Corporation, 347 Pa. 591 (1943), it was held that where, in a deed of trust, grantors had reserved a life estate but the remainder was invested with an immediate beneficial interest, only the enjoyment and possession being postponed

until the death of grantor, the estate in remainder was not testamentary in nature (pp. 594, 595).

The court stated, inter alia:

"In that connection it is not material that the grantors reserved to themselves the power of revocation or modification: Restatement, Trusts, Sec. 57(1); *Dickerson's Appeal*, 115 Pa. 198, 210, 8 A. 64, 69; *Lines v. Lines*, 142 Pa. 149, 167, 21 A. 809, 810, 811; *Windolph v. Girard Trust Co.*, 245 Pa. 349, 367, 368, 91 A. 634, 639, 640; *Dolan's Estate*, 279 Pa. 582, 589, 124 A. 176, 178; *Beirne v. Continental-Equitable Title & Trust Co.*, 307 Pa. 570, 576, 161 A. 721, 722. If the right of revocation is not actually exercised the validity of the trust remains as unaffected as if the power had not been reserved: *Dickerson's Appeal*, supra, 210 A. 69; *Lines v. Lines*, supra, 167 A. 810. Although the estate in remainder is subject to the possibility of its being divested by a revocation, 'the right to revoke, unexercised, is a dead thing': *Dolan's Estate*, supra, 589, A. 178. Nor can defendant force Flint to exercise the power. 'Unless it is otherwise provided by statute a power of revocation reserved by the settlor cannot be reached by his creditors. If he revokes the trust and recovers the trust property, the creditors can reach the property; but they cannot compel him to revoke the trust for their benefit': Restatement, Trusts, §330, comment o."

See also: Townsend Trust, 349 Pa. 162 (1944); McKean Trust, 71 D. & C. 429 (1950).

In Leffmann's Estate, 312 Pa. 236 (1933), the court stated:

"Our earlier decisions leave no doubt that the tax may properly be assessed in cases where the transfer of title to the property in question is made in the lifetime of the settlor but the beneficial enjoyment comes into being only at his death: *Reish v. Com.*, 106 Pa. 521. 'The fact that property, a sum of money,

was transferred by being placed in trust, will not affect its taxability if the profits (income) from it were intended to take effect in enjoyment after death. The Commonwealth's power to levy such tax under such circumstances, cannot be doubted': *Barber's Est.*, 304 Pa. 235, 239."

In Commonwealth v. Linderman's Estate, 340 Pa. 289 (1940), a decedent, prior to the time the transfer inheritance tax was extended to lineal descendants, executed a deed of trust in favor of her children wherein she reserved the right to receive the entire income from the corpus until her death or remarriage, and also the right to demand one third of the corpus in the event she remarried. After the tax was extended to lineals, she died without having remarried. The question raised was whether the one third of the corpus was subject to the tax. The lower court held that it was not subject to the tax. This decision was reversed by the Supreme Court. The court said (p. 291) :

"The absolving principle is that the settlor has divested himself absolutely of all title to the property, not at his death, but at the time of execution of the instrument creating the trust. There must not remain in the settlor the opportunity to change its provisions so that he may reassert dominion: *Houston's Est.*, supra; *Leffmann's Est.*, 312 Pa. 236, 167 A. 343. Here, it cannot be said that the settlor divested herself absoultely of *all* title to the property, as there remained in her the right to change the provisions of the trust instrument and to reassert dominion over one-third of the corpus. She reserved the right to reclaim in her own right, absolutely, one-third of it in the event of remarriage. If the provision to this effect applied to the whole principal of the trust, it would be difficult to convincingly assert that she had divested herself, absolutely, of all title to it; the fact that it applies to only

a fraction thereof can make no difference, so far as applying the principle is concerned."

The court further stated that the fact that settlor did not remarry did not make the reservation a "dead thing". It is interesting to note that the court, noting Dolan's Estate, supra, referred to the holding therein that the reservation of the power of revocation unexercised made it a "dead thing" as simply an "observation".

Mr. Justice Horace Stern, speaking for the court, in Glosser Trust, 355 Pa. 210 (1946), at page 215, said:

"What is the test to determine whether, for inheritance tax purposes, a transfer is to be regarded as effective immediately, or as not effective in possession or enjoyment until at or after the death of the donor? It is clear, from a long line of authorities, that, even though the property has been delivered to a trustee and vested remainders given to the beneficiaries, if the donor himself continues as beneficiary until his death, as by reserving a right to the income during his life, the interest of the remaindermen does not take effect until the donor's death and is, therefore, subject to the transfer inheritance tax. But, if there is no such reservation, if the donor has not retained any power of revocation or amendment whereby he may reassert dominion over the property, if he has divested himself absolutely of all title to the property at the time of the execution of the trust instrument, the transfer is a perfected gift inter vivos and, therefore, not subject to the tax: *Commonwealth v. Linderman's Estate*, 340 Pa. 289, 291, 17 A. 2d 397, 398. *The criterion is not whether the beneficiaries are to acquire actual possession or enjoyment at or after the death of the donor but whether the latter has irrevocably parted with all his interest, title, possession and enjoyment in his lifetime.*" (Italics supplied.)

In Todd Trust, 358 Pa. 530 (1948) the question posed was as follows: Is there a transfer intended to take effect in possession or enjoyment at or after death?

The settlor of an inter vivos trust directed payment of the income therefrom to his wife for life; in the event she predeceased him, to himself for life, and then the remainder to designated charities; settlor reserved the right of complete revocation. Settlor predeceased his wife, the power of revocation not having been exercised. Mr. Justice Patterson, speaking for the court, adopted the criterion stated by Mr. Justice Stern in Glosser Trust, supra, and in the Todd case found that settlor had not completely divested himself of all interest in the property. The court below in sustaining the appeal had relied on Dolan's Estate, supra, but it is interesting to note that in the Todd case, Dolan's Estate was neither distinguished nor reversed, nor was any further comment thereon made by the court other than a statement that Dolan's Estate had been relied on by the court below.

In summary of these authorities: under the rule in Dolan's Estate, supra, decedent's reservation of the power to revoke the assignment by permanently leaving the home, having been unexercised at the time of her death, the power of revocation would be considered a "dead thing" and, therefore, would not preclude the transfer being classified as a transfer taking effect prior to death, and, therefore, not taxable for inheritance tax purposes; however, if the criterion or test as to the effective date of such a transfer is that laid down in Glosser Trust and Todd Estate, both supra, then so long as decedent had retained the power of revocation of the assignment, even though such power had not been exercised up to the time decedent died, such reservation of the power to revoke would preclude a finding that decedent had entirely divested herself

of her right, title and interest in the property, the transfer would not take effect until death, and therefore, would be taxable.[3]

If the sole question to be determined in the instant case was whether the instrument executed and delivered by decedent on February 18, 1931, constituted a transfer whereby decedent divested herself of all control and power over her property, then under the criterion laid down by our Supreme Court in Glosser Trust, and Todd Estate, both supra, it would appear that the transfer did not take effect prior to but only at the time of the death of decedent, and, therefore, should be taxable.

However, the language of President Judge Copeland of Westmoreland County in a recent decision, Cowan Estate, 78 D. & C. 543, is particularly applicable here:

"As late as March 19, 1951, the Supreme Court failed to say whether or not *Dolan's Est.*, has, in effect, been overruled by the statements in later cases such as *Common. v. Linderman's Estate.*, supra: *Todd Trust*, supra; *Myers Est.*, 359 Pa. 577. In the case of *Dorsey Est.*, 366 Pa. 557, the appellant based his argument upon *Dolan's Est.* and the Supreme Court said, page 562: 'The Commonwealth contends that the decision in *Dolan's Estate* has been in effect overruled by pronouncements in subsequent opinions of this Court. Be that as it may, however, the decision in *Dolan's*

---

[3] By analogy compare the situation where A hands to B a deed to be handed to C upon A's death, A reserving the right to recall the deed. A majority of State courts hold that delivery included the present intent to pass title, the reservation in A of the power to recall the deed is incompatible with A's intent to relinquish right of control and, therefore, inconsistent with an intent to pass title, hence no delivery. A minority view, represented by Iowa and Pennsylvania, holds that if when A dies, A has not recalled the deed at time of vesting, the title relates back to the first delivery of the deed by A to B. Hartmann's Estate (No. 2), 320 Pa. 331 (1935); 43 Dickinson Law Review, pp. 188, 190-93, incl., April 1939.

*Estate* is not here in point since the Commonwealth is not basing its claim on the fact that there was here what amounted to a reserved right of revocation, but on the fact that the transfer to decedent's beneficiary was intended to take effect in possession or enjoyment only at and after his death.'

"Such being the state of the law, it necessarily follows, as far as this court is concerned, being bound by the decisions of the appellate courts, that *Dolan's Est.*, supra, is still the law in this Commonwealth, and, therefore, this court holds that the trust fund created March 21, 1949, is not taxable for inheritance purposes, and therefore, the first item in the appeal is sustained."

Therefore, if this were the sole question before the court, this court, too, would feel bound by Dolan's Estate and would hold the transfer not taxable for inheritance tax purposes.

However, the difficulty we encounter in attempting to apply to the instant case the principle of decisions of the appellate courts such as Dolan's Estate, Glosser Trust and Todd Estate, all supra, is that those cases dealt with factual situations involving the transfer of property by way of gift, whereas, here we have a transfer, not by way of a gift, but rather for a purportedly valuable consideration.

As a general rule taxing statutes are intended to tax only those transfers operating by way of gift and are not intended to tax transfers based upon just and adequate legal consideration. The State's claim of a right to tax a transfer on the theory that it is a transfer intended to take effect at or after the time of death may be defeated, if the transfer, when made, was for a valuable consideration, even though the transfer be one which falls within the meaning of a transfer not intended to take effect until at or after death.

The late Mr. Chief Justice Maxey, speaking for the court in Neller Estate, 356 Pa. 628 (1947), considering the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, and the Act of May 27, 1943, P. L. 757, sec. 1, 72 PS §2301, stated, inter alia (pp. 631-32) :

"This amended Act of 1943 makes it clear that the Legislature did not contemplate by the Transfer Inheritance Tax Act that the Transfer of money used to pay a bona fide debt for an adequate and full consideration in money or money's worth should be taxable. . . .

"Certainly the Legislature did not intend by the Transfer Inheritance Tax Act of June 20, 1919, and its amendments, that the money used by an executor or administrator to pay the debts a deceased debtor intended to have paid only after his death should be subject to a transfer tax. Many individuals late in life incur debts whose payments they do not intend to be made until after their death, for the reason that their chief assets consist of the promises in their life insurance policies or because their estate is in such form that their debts cannot be liquidated until their estate is converted into money or its equivalent. If the money received by a creditor in payment of a debt from a decedent is subject to an inheritance tax because the debtor's intention was that the payment should be made only after his death it is impossible to find any reason why *all* moneys received by creditors after the death of their debtors should not be taxed, provided both creditor and debtor intended or knew that the debt would not be paid until after the debtor's death. There is no basis for a logical distinction in imposing 'transfer taxes', between a transfer of money from a decedent's estate to pay his general debts and a transfer of money from a decedent's

estate to pay a debt whose time of payment was formally fixed 'at or after his death'. . . ."

Further:

"The very name 'Transfer Inheritance Tax' by which the tax imposed by the Act of 1919 is generally referred to indicates that the transfer which is taxable arises from an inheritance and not from a creditor-debtor relationship based on a contract."

In the instant case, however, neither the executor nor the home take the position that there was an actual transfer of the bank accounts from decedent to the home at any time prior to death. On the record before this court the home does not claim that at any time prior to death it became the owner of the bank accounts; there is no evidence that the home at any time exercised any control or indication of ownership over the bank accounts.[4]

Instead, the executor and the home take the position that as of the date of decedent's death the home was a creditor of decedent's estate, and the agreement of February 18, 1931, is utilized by the home as evidence of the creation of a creditor-debtor relationship. Therefore, it becomes unnecessary for the court to determine whether or not the agreement of February 18, 1931, effected a transfer of the property of decedent to the home or to determine whether the transfer was for a good and valuable consideration and thus not taxable, and the problem simply is to determine whether or not the home was a creditor of the estate of the decedent and, if so, in what amount.

In considering this question we must bear in mind not only the provisions of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, 72

---

[4] Decedent never transferred the bank accounts from her name to that of the home. The record is silent on the question of deposits and withdrawals at all from the accounts between February 18, 1931, and date of death.

PS §2301(c), supra, but, in addition thereto, the Act of May 27, 1943, sec. 1, P. L. 757, as amended, 72 PS §2302, which provides, inter alia:

"In ascertaining the clear value of such estates, the only deductions to be allowed from the gross values of such estates by the register of wills shall be the debts of the decedent, reasonable and customary funeral expenses . . . *provided that the deductions herein allowed in the case of any indebtedness of the decedent shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth.*" (Italics supplied.)

Was decedent indebted to the home? For a period of approximately 19½ years decedent was a guest at the home during which time she received her board, her food and other necessities, and for which so far as the record discloses the home never received any money. Under the agreement between decedent and the home, in consideration of the care and attention to be given by the home to decedent, decedent assigned and set over to the home her property. The agreement is of importance for only three reasons: (1) As a request, implied, at least, that the home furnish to decedent its services; (2) that the services to be rendered to decedent were not to be rendered gratutiously but with the expectation that they would be paid for to the extent to which decedent had property; (3) that the parties had agreed that for the services to be rendered by the home to the decedent $3 per week for the period during which decedent was a guest at the home, plus $500, would be fair and adequate.

This court takes the position that a creditor-debtor relationship did exist between the home and decedent and the parties as evidenced by the agreement of February 18, 1931, did fix a value upon the services to be rendered, to wit, $500, plus $3 per week, for each

and every week during which decedent remained in the home.

There is no question, in applying the Act of 1943, supra, to the instant case, that the parties entered into a bona fide agreement and that an indebtedness is due and owing by decedent's estate to the home, and we must resolve what would be an adequate and just consideration in money or money's worth for the services rendered by the home to decedent.

In Wilson's Estate, 40 D. & C. 468 (1940), parties named Wilsons, owners of a house in Lansdowne, entered into an agreement with parties named Puseys. Under this agreement Wilsons conveyed their home to R in trust for certain purposes: Wilsons agreed to maintain and repair the outside of the property, pay taxes thereon, pay for medical services, medicine and equipment necessary for their own care, funeral expenses and additional services when necessary and agreed to deliver title or possession not only of the property but all household goods and effects therein to Puseys. Puseys agreed during the lifetime of the Wilsons to live in the property, furnish heat, light and water for the premises, make all necessary repairs to the inside of the building, to maintain for the Wilsons a clean home, a wholesome table and that Mrs. Pusey, a nurse, would nurse and care for either or both of the Wilsons when necessary for a period not in excess of 12 hours per day. It was further provided that, on the death of the Wilsons, R, as trustee, would convey the property to the Puseys. On the death of the Wilsons it was contended by the Puseys that inasmuch as the house in question was given to them for a consideration which they fully performed, the same was not taxable. Under the terms of the agreement there was a right on the part of R, as trustee, and the Wilsons to terminate the agreement provided that the Puseys would be paid certain sums of money. The

court held that the Puseys were entitled to a deduction for inheritance tax purposes to the extent of expenditures made by them for a new heating plant and for painting the exterior of the building, but that otherwise the house of the Wilsons was taxable at its fair value.

In Mills Estate, 367 Pa. 504 (1951), the question raised was whether an amount awarded to a widow under the terms of an agreement for support constituted a debt of the husband contracted bona fide and for an adequate and just consideration in money or money's worth. The court held that a bona fide separation and support agreement between a husband and wife providing for a payment at the husband's death, constituted a debt and was consideration in money or money's worth within the meaning of the Inheritance Tax Act of 1919, supra, as amended, and that, if the agreement were bona fide, the amount thereof was deductible for inheritance tax purposes to the extent that the debt represented a substantially adequate and just consideration in money or money's worth. Cf. Stadtfeld Estate, 359 Pa. 147 (1948).

In summary, this court finds as follows:

1. That a creditor-debtor relationship existed between the home and decedent as evidenced by the agreement of February 18, 1931.

2. That the parties by this agreement of February 18, 1931, did place a value upon the services to be rendered by the home to decedent—$500, plus $3 per week for each and every week during which decedent remained in the home.

3. That an adequate and just consideration in money for the services rendered by the home to decedent would be $3,554—that is, $500, plus $3 per week for a period of 19 years 7 months and 14 days.

The appeal of the Wyoming National Bank of Wilkes-Barre, Pa., is sustained to the extent that the

78

Register of Wills should allow a debt or deduction for inheritance tax purposes in the sum of $3,554. The difference between the balance claimed as a debt or deduction of $5,723.24 and the amount allowed as a deduction, $3,554, or $2,169.24, we find to be taxable for inheritance tax purposes. As thus modified the action of the register of wills is sustained.